No. 25-2923

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

ARM LTD., *Plaintiff-Appellant*,

v.

QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., NUVIA, INC., *Defendants-Appellees*.

Appeal from the U.S. District Court for the District of Delaware, No. 1:22-cv-01146, Hon. Maryellen Noreika

## BRIEF FOR PLAINTIFF-APPELLANT ARM LTD.

GREGG F. LOCASCIO
JASON M. WILCOX
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 389-5910

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

JOSEPH R. PALMORE
ALISON H. HUNG
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
jpalmore@mofo.com

ERIK J. OLSON
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

SCOTT F. LLEWELLYN
MORRISON & FOERSTER LLP
370 17th Street, 4200 Republic Plaza
Denver, CO 80202

*Counsel for Plaintiff-Appellant Arm Ltd.*

JANUARY 15, 2026

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, Arm Ltd. makes the following disclosure:

1. For non-governmental corporate parties, please list all parent corporations:

Arm Holdings plc

2. For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

Arm Ltd. is 100% owned by Arm Holdings plc.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

Softbank Group Corp. beneficially owns approximately 87% of the total issued and outstanding share capital of Arm Holdings plc.

4. In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

Dated:  January 15, 2026                          /s/ Joseph R. Palmore
                                                  Joseph R. Palmore

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ...........................................................................vi

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ...................................................................3

STATEMENT OF ISSUES ............................................................................3

STATEMENT OF RELATED CASES ...............................................................4

STATEMENT OF THE CASE.........................................................................4

     A.     Factual Background.........................................................................4

          1.     Arm and Qualcomm entered an Architecture License Agreement authorizing limited use of Arm's technology ..........4

          2.     Arm and Nuvia entered a separate ALA, and Nuvia developed code that is a derivative of Arm Technology ............6

          3.     Qualcomm and Nuvia breached the Nuvia ALA by completing an acquisition and transferring Nuvia's pre-acquisition code to Qualcomm without Arm's consent..............7

          4.     Nuvia and Qualcomm further breached the Nuvia ALA by failing to stop using Nuvia's pre-acquisition code ...................10

     B.     Procedural History.........................................................................11

          1.     Arm sued Nuvia and Qualcomm for breach of the Nuvia ALA and Qualcomm counterclaimed for declaratory judgment.........................................................................11

          2.     The district court granted Nuvia judgment on Arm's breach claim and denied Arm judgment on all other claims ......................................................................................12

SUMMARY OF ARGUMENT .....................................................................13

STANDARD OF REVIEW ..............................................................................17

ARGUMENT ................................................................................................17

I.    THE DISTRICT COURT ERRED IN DENYING ARM JUDGMENT ON WHETHER QUALCOMM'S ALA COVERS CORES CONTAINING PRE-ACQUISITION NUVIA CODE..................................17

    A.    Qualcomm's Cores Containing Pre-Acquisition Nuvia Code Are Not Licensed Under The Qualcomm ALA ........................................20

        1.    The unambiguous Qualcomm ALA does not allow Qualcomm to use Nuvia code that was created using Arm technology delivered under the Nuvia ALA............................20

            a.    The Qualcomm ALA covers only designs created by or for Qualcomm, using Arm technology delivered to Qualcomm under the Qualcomm ALA ......20

            b.    The undisputed trial evidence showed Qualcomm's cores contain pre-acquisition code developed by and for Nuvia that used Arm's technology delivered under the Nuvia ALA ....................................................22

        2.    Qualcomm's contrary reading contradicts the ALA's plain language ..............................................................................24

    B.    The District Court Erred By Failing To Interpret The Qualcomm ALA Consistent With The Unambiguous Language And Undisputed Evidence........................................................................27

        1.    Neither summary-judgment proceedings nor jury instructions precluded Arm's JMOL request..........................28

            a.    The judgment-as-a-matter-of-law inquiry applies correct law, not instructed law........................................28

            b.    Regardless, Arm made clear its position that the Qualcomm ALA was unambiguous ..............................30

2.    No other part of the court's ruling supports the conclusion that the ALA can be interpreted as Qualcomm demands .........32

II.    THE DISTRICT COURT ERRED IN GRANTING NUVIA JUDGMENT ON ARM'S BREACH CLAIM ...............................................35

    A.    A Reasonable Jury Could Have Found Arm Proved Harm From The Breach Of The Nuvia ALA .......................................................35

        1.    Absent a limiting instruction, the jury was entitled to consider admitted lost-royalties evidence to find harm ............36

            a.    The district court wrongly imposed a retroactive limiting instruction that Nuvia never sought .................38

            b.    Regardless, Arm preserved its lost-royalties theory of harm.........................................................................40

            c.    Even were this an issue of discovery and case management, the district court abused its discretion .....................................................................42

        2.    In discounting evidence of harm to Arm's ecosystem, the district court usurped the role of the jury ................................43

        3.    Arm presented sufficient evidence of harm based on the breach of the Nuvia ALA alone ..............................................47

    B.    A Reasonable Jury Could Have Found Nuvia Breached The Nuvia ALA ..................................................................................48

        1.    Arm properly terminated the Nuvia ALA, thus triggering its post-termination obligations................................................49

        2.    Nuvia breached its ALA by failing to stop using its pre-acquisition code because that code is a "derivative" of "ARM Technology"...................................................................49

III.    GRANTING ARM RELIEF ON EITHER OF THESE CLAIMS REQUIRES A NEW TRIAL ON ANY REMAINING CLAIMS ................51

A.      Judgment For Arm On The Qualcomm-ALA Counterclaim Requires A New Trial On Arm's Breach Claims Against Nuvia And Qualcomm ..................................................................52

B.      A New Trial On Arm's Nuvia Breach Claim Requires A Complete New Trial ..........................................................54

CONCLUSION .............................................................................57

## TABLE OF AUTHORITIES

**Cases**

*Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*,
753 F.2d 321 (3d Cir. 1985) ..................................................................55

*Artifex Software, Inc. v. Hancom, Inc.*,
No. 16-cv-06982-JSC,
2017 WL 1477373 (N.D. Cal. Apr. 25, 2017)....................................44

*ASP Props. Grp., L.P. v. Fard, Inc.*,
133 Cal. App. 4th 1257 (2005) ..........................................................26

*Avaya Inc., RP v. Telecom Labs, Inc.*,
838 F.3d 354 (3d Cir. 2016) .......................................................52, 53, 54

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)..............................................................................29

*Church of Scientology Int'l v. Elmira Mission of Church of
Scientology*,
794 F.2d 38 (2d Cir. 1986) ................................................................44

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
68 Cal. App. 4th 445 (1998) ..............................................................24

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
43 Cal. 4th 375 (2008) ........................................................................18

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988)..............................................................................28

*Consol. World Invs., Inc. v. Lido Preferred Ltd.*,
9 Cal. App. 4th 373 (1992) ................................................................32

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.*,
180 F.3d 542 (3d Cir. 1999) ..............................................................31

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.*,
63 F.3d 262 (3d Cir. 1995) ................................................................27

*Darbun Enters., Inc. v. San Fernando Cmty. Hosp.*,
239 Cal. App. 4th 399 (2015) ...............................................................47

*Diaz v. United States*,
223 U.S. 442 (1912).............................................................................39

*Drumgold v. Callahan*,
707 F.3d 28 (1st Cir. 2013)..................................................................55

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*,
No. 1-04-cv-31829,
2012 WL 12987159 (Cal. Super. Ct. Jan. 9, 2012) ............................44

*E & R Erectors, Inc. v. Sec'y of Lab.*,
107 F.3d 157 (3d Cir. 1997) ...............................................................39

*Ebker v. Tan Jay Int'l, Ltd.*,
739 F.2d 812 (2d Cir. 1984) ...............................................................29

*Elation Sys., Inc. v. Fenn Bridge LLC*,
71 Cal. App. 5th 958 (2021) ...............................................................47

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) ...............................................................54

*Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*,
919 F.3d 266 (5th Cir. 2019) ..............................................................55

*Fed. Deposit Ins. Corp. v. Network Cap. Funding Corp.*,
No. 8:14-cv-00967-AB-AN,
2015 WL 13916255 (C.D. Cal. Aug. 28, 2015) ..................................46

*Founding Members of the Newport Beach Country Club v. Newport
Beach Country Club, Inc.*,
109 Cal. App. 4th 944 (2003) .............................................................33

*Gasoline Prods. Co. v. Champlin Refin. Co.*,
283 U.S. 494 (1931)..............................................................16, 54, 56

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998) ...............................................................39

*GN Netcom, Inc. v. Plantronics, Inc.*,
   930 F.3d 76 (3d Cir. 2019) .................................................................52

*Grider v. Keystone Health Plan Cent., Inc.*,
   580 F.3d 119 (3d Cir. 2009) ..............................................................43

*Integrated Voting Sols., Inc. v. Automated Ballot Concepts, LLC*,
   No. F071837,
   2017 WL 371385 (Cal. Ct. App. Jan. 26, 2017)................................47

*Kashmiri v. Regents of Univ. of Cal.*,
   156 Cal. App. 4th 809 (2007) ............................................................27

*Kutner Buick, Inc. v. Am. Motors Corp.*,
   868 F.2d 614 (3d Cir. 1989) ..............................................................35

*Laskaris v. Thornburgh*,
   733 F.2d 260 (3d Cir. 1984) ..............................................................45

*In re Lemington Home for the Aged*,
   777 F.3d 620 (3d Cir. 2015) .........................................................35, 43

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ...........................................................17, 37

*LNC Invs., Inc. v. First Fid. Bank*,
   126 F. Supp. 2d 778 (S.D.N.Y. 2001) ...............................................39

*Mancini v. Northampton Cnty.*,
   836 F.3d 308 (3d Cir. 2016) ..............................................................45

*Med. Operations Mgmt., Inc. v. Nat'l Health Lab'ys, Inc.*,
   176 Cal. App. 3d 886 (1986) .............................................................34

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
   227 F.3d 78 (3d Cir. 2000) ................................................................31

*Omega Pats., LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021) ..........................................................39

*Pincay v. Andrews*,
238 F.3d 1106 (9th Cir. 2001) ................................................................29

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ..............................................................................37, 45

*Reigelsperger v. Siller*,
40 Cal. 4th 574 (2007) ............................................................................33

*Scheenstra v. Cal. Dairies, Inc.*,
213 Cal. App. 4th 370 (2013) ...........................................................17, 18, 32

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
758 F.2d 613 (3d Cir. 1985) ..................................................................38

*Simmons v. City of Phila.*,
947 F.2d 1042 (3d Cir. 1991) ...............................................................38, 40

*Somogyi v. Butler*,
518 F. Supp. 970 (D.N.J. 1981) ............................................................46

*Spence v. Bd. of Educ. of Christina Sch. Dist.*,
806 F.2d 1198 (3d Cir. 1986) ...............................................................54, 56

*State v. Cont'l Ins. Co.*,
55 Cal. 4th 186 (2012) ...........................................................................21

*Sweet v. Johnson*,
169 Cal. App. 2d 630 (1959) .................................................................47

*Tamarind Lithography Workshop, Inc. v. Sanders*,
143 Cal. App. 3d 571 (1983) .................................................................47

*Trouser Corp. of Am. v. Goodman & Theise, Inc.*,
153 F.2d 284 (3d Cir. 1946) ..................................................................40

*Williams v. Coleman*,
70 Cal. App. 400 (1924) ........................................................................47

*Williams v. Rene*,
72 F.3d 1096 (3d Cir. 1995) ..................................................................56

ix

*Williams v. Slade*,
   431 F.2d 605 (5th Cir. 1970) ....................................................................56

*Wolf v. Walt Disney Pictures & Television*,
   162 Cal. App. 4th 1107 (2008) ........................... 18, 21, 22, 32, 34, 35

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ...............................................................17, 42

**Statutes**

15 U.S.C. § 1121 .........................................................................................3

28 U.S.C.
   § 1291....................................................................................................3
   § 1331....................................................................................................3
   § 1332....................................................................................................3
   § 1367....................................................................................................3

Cal. Civ. Code § 3360....................................................................47, 48

**Rules**

Fed. R. Civ. P. 37 .....................................................................................43

Fed. R. Civ. P. 50 .........................................................2, 14, 30, 31, 37, 42

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* (3d ed. 2025)
   § 2553....................................................................................................31
   § 2805....................................................................................................52

x

**INTRODUCTION**

Plaintiff-appellant Arm is a global leader in the microprocessor industry that licenses its technology to other companies.  Arm signed two separate licenses (ALAs) with defendants-appellees:  the first with Qualcomm, a large semiconductor company, in 2013, and the second with Nuvia, a small startup, in 2019.  The two ALAs had certain distinct terms, but they both provided express protections for Arm's rights and business, including strict limitations on use of Arm's technology; safeguards to maintain confidentiality of Arm's information; and licensee-specific royalty rates based on Qualcomm's and Nuvia's distinct market positions.

In 2021, Qualcomm acquired Nuvia.  In direct violation of the licensing agreements, defendants transferred to Qualcomm code that Nuvia had developed under the Nuvia ALA using Arm's technology.  They used that code in Qualcomm's products—all in an effort to pay Arm for its technology under Qualcomm's lower royalty rates rather than Nuvia's higher ones.  Defendants' tactic succeeded, saving them billions in royalties.  But that conduct violated the Nuvia ALA.  And it was not permitted under the Qualcomm ALA, which expressly did not license technology Arm delivered to a separate company under a separate ALA.

Arm sued Qualcomm and Nuvia for breach of the Nuvia ALA.  Qualcomm counterclaimed for declaratory judgment that its products incorporating pre-acquisition Nuvia code were licensed by Qualcomm's ALA.  The jury deadlocked

on Arm's claim against Nuvia and found for defendants on Arm's claim against Qualcomm and Qualcomm's counterclaim. After trial, Arm moved for judgment as a matter of law or a new trial; Nuvia moved for judgment as a matter of law on the breach claim on which the jury deadlocked. The district court entered final judgment for Nuvia and Qualcomm on all claims. In doing so, the court erred across the board, repeatedly conflating legal issues with factual questions.

First, the district court erred by treating interpretation of the Qualcomm ALA as a factual issue rather than a legal one. The express terms of Qualcomm's ALA make clear that Qualcomm does not have carte blanche to use Arm's technology. To the contrary, the ALA unambiguously states Qualcomm may use Arm's technology to design products only to the extent they are developed by or for *Qualcomm*, using technology specifically delivered by Arm to *Qualcomm* under the *Qualcomm* ALA. The undisputed trial evidence showed that the Qualcomm products at issue met none of those requirements. Rather, they contained Nuvia code developed by and for *Nuvia*, using Arm's technology that Arm delivered to *Nuvia* under the *Nuvia* ALA—an entirely separate agreement signed years after the Qualcomm ALA.

Second, the district court erred in granting Nuvia judgment as a matter of law on Arm's breach claim. In deciding Arm failed to present sufficient evidence of harm from the breach, the court once again turned the Rule 50 standard on its head.

2

It concluded that Arm could not rely on harm evidence that both Arm *and* Nuvia had presented to the jury without any objection or request for a limiting instruction by Nuvia. And it discounted Arm's remaining evidence of harm because it deemed Nuvia's competing evidence more probative. Both those decisions effectively substituted the district court's version of the evidence for the jury's. Arm should have a new trial on its breach claim against Nuvia.

Lastly, granting Arm relief on either of these issues requires a new trial on any remaining claims, given the intertwined nature of all three jury questions and the district court's interrelated rulings on them.

The judgment should be reversed in part and vacated in part.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332, and 1367(a). This Court has jurisdiction under 28 U.S.C. § 1291. Final judgment was entered September 30, 2025; Arm timely appealed on October 1, 2025. Appx0023, 0024-0027.

## STATEMENT OF ISSUES

1.    Whether the district court erroneously denied Arm judgment as a matter of law on whether Qualcomm products that include Nuvia code using Arm's technology are unlicensed under the unambiguous terms of the Qualcomm ALA. Appx6330-6331, 6642-6647, 6696-6702, 0009-0016.

3

2.      Whether the district court erroneously granted Nuvia judgment as a matter of law on Arm's breach-of-contract claim against Nuvia.  Appx6662-6687, 6725-6740, 0016-0020.

3.      Whether granting Arm relief on either claim requires a new trial on any remaining claims.  Appx6652-6658, 6708-6712, 0020-0021.

## STATEMENT OF RELATED CASES

This case has not been before this Court.  Arm is aware of one related pending case:  *Qualcomm Inc. v. Arm Holdings plc*, No. 1:24-cv-00490-MN (D. Del.).

## STATEMENT OF THE CASE

### A.      Factual Background

#### 1.      *Arm and Qualcomm entered an Architecture License Agreement authorizing limited use of Arm's technology*

Arm developed an industry-leading instruction set architecture used in high-performing, energy-efficient Central Processing Units ("CPUs").  Appx5664-5665, 5672-5673.  A CPU, frequently described here as a "core," is the "brain" of modern electronic devices.  Appx5664.  Arm's architecture allows software to "speak" to cores on any device by specifying requirements for engineers to follow when designing both cores and software.  Appx5666, 5670, 6167-6168.  Arm's architecture is "everywhere," used by 70% of the world's population and implemented in over 300 billion devices.  Appx5667.  Arm codifies its instruction set architecture in its "architecture reference manual" (the "Arm ARM").

4

Appx5670, 5925-5926.  The Arm ARM reflects 35 years of Arm's research and development work.  Appx9356-9363, 5670-5671, 5925.

Arm monetizes its instruction set architecture through ALAs, which are central to Arm's business.  Appx5668-5671.  An ALA authorizes licensees to use Arm's instruction set architecture to design Arm-compliant cores.  Appx5671, 6043. To be Arm-compliant, a core must execute all the instructions in the Arm ARM, and no more.  Appx5756, 5836, 5936, 6008, 6183.  In this case, Arm-compliant cores are referred to as "Architecture Compliant Cores."  Appx6183.  Another type of license is a "Technology License Agreement" ("TLA"), through which Arm licenses its own "off-the-shelf" cores.  Appx6013.

Qualcomm, one of the world's largest semiconductor companies, builds semiconductor chips for electronic devices.  Appx6228-6229.  In 2013, Qualcomm signed an ALA (the "Qualcomm ALA") and a TLA (the "Qualcomm TLA") with Arm.  Appx6886-6928, 6929-6951, 6979-7033.

The Qualcomm ALA, including its Annex 1, grants Qualcomm a license to use the "applicable ARM Technology" solely to design "Architecture Compliant Cores."  Appx6935.  To be licensed, an "Architecture Compliant Core" must be (1) "developed by or for" Qualcomm; (2) "under the licenses granted in" the Qualcomm ALA; and (3) created using only "Arm Technology"—defined as "the technology

identified in each Annex 1 and any Extensions and Updates thereto delivered by ARM or a Controlling Party to [Qualcomm] under this ALA." Appx6886, 6932.

### 2. *Arm and Nuvia entered a separate ALA, and Nuvia developed code that is a derivative of Arm Technology*

Six years later, engineers seeking to develop Arm-compliant cores founded Nuvia. Appx5566-5567, 7035. Nuvia saw obtaining an Arm ALA as "critical" to its core development plans. Appx7035, 7038. In 2019, Arm and Nuvia signed an ALA allowing Nuvia to use specified "ARM Technology" to design "Architecture Compliant Cores" at Nuvia. Appx5830, 6838, 6858, 6874. Nuvia's royalty rates were several times higher than Qualcomm's. Appx5633. The ALA provided that Nuvia could not assign its rights without Arm's consent, and defined an acquisition of Nuvia as such an assignment. Appx6850. As Nuvia's CEO recognized, the ALA would be "NULL" were Nuvia acquired, and any acquiring company would need to start over under its own license to use any of Arm's technology. Appx7045.

Arm had the right to terminate the Nuvia ALA if Nuvia materially breached. Appx6849. Upon termination, Nuvia was required to stop using all "ARM Technology," "ARM Confidential Information," and "any products embodying such technology or information." Appx6849. Nuvia was also required to "destroy or return to ARM any ARM Confidential Information," which included "any ARM Technology or derivatives." Appx6849.

6

The scope of Nuvia's termination obligations thus turned on what qualified as "ARM Technology" and derivatives or as "ARM Confidential Information." The Nuvia ALA defined both. "Confidential Information" was "the Arm Technology and derivatives thereof … *including Architecture Compliant Cores*." Appx6836 (emphasis added). "ARM Technology" was "any or all, as the context admits, of the technology identified in each Annex 1 and any Updates thereto delivered by ARM to Licensee"—that is, Nuvia. Appx6836. Annex 1 confirmed that "Arm Technology" included, among other things, the Arm ARM. Appx6870, 6872, 5816.[1]

Nuvia began work on its Arm-compliant core. Specifically, Nuvia developed "RTL"—code that describes core design—for a processor named "Phoenix." Appx5836, 5891. Nuvia used the Arm ARM to develop this code, which implemented Arm's instruction set architecture. Appx5936, 6004-6005, 6172-6175, 6179-6182. Nuvia intended Phoenix to be an Architecture Compliant Core. Appx5836, 5927, 6004.

> **3.    *Qualcomm and Nuvia breached the Nuvia ALA by completing an acquisition and transferring Nuvia's pre-acquisition code to Qualcomm without Arm's consent***

As of 2019, Qualcomm's "track record of custom CPU development" was "not very good," and it did not have the necessary design "team." Appx6276-6277.

---

[1] Arm and Nuvia executed versions of Annex 1 effective in September 2019, Appx6853-6868, and March 2020, Appx6869-6882. References to Annex 1 are to the later version.

So it tried to negotiate "a deal … for Nuvia to develop a custom core for Qualcomm." Appx6278.  Nuvia declined, citing focus on other projects.  Appx8593.  That was "horrible news" for Qualcomm.  Appx8592.  Qualcomm then proposed purchasing Nuvia outright, recognizing it would be a deal for "talent acq[uisition]" only. Appx8591; *see* Appx6280-6281.  Qualcomm announced its acquisition of Nuvia in January 2021.  Appx5547.

Before closing the Nuvia acquisition, Qualcomm informed Arm it intended to "transfer Nuvia's work and employees" to Qualcomm and have the "then former Nuvia employees continue their activities under the Qualcomm ALA and TLA." Appx7116.  It offered to amend the Qualcomm ALA and TLA "to the extent Nuvia was utilizing any ARM technology not currently covered under" those agreements and asked if Arm had "concerns" about this plan.  Appx7116.  Arm responded that "any transfer of designs, rights, or licenses" from Nuvia to Qualcomm required "Arm's prior consent" under the Nuvia ALA, which could be documented via a "three-way agreement" plus a "separate commercial agreement between Arm and Qualcomm."  Appx7117.  Qualcomm asked Arm to send that "three-way agreement" "promptly."  Appx7119-7120.  Arm stated it would consent to "transferring Nuvia CPU designs to Qualcomm" upon an "amendment" to Qualcomm's ALA to align it with the terms of Nuvia's ALA, including Nuvia's royalty rates, and to include "safeguards with respect to ARM's confidential information."  Appx7121.

Qualcomm balked at paying Nuvia's royalty rates. Appx5585-5586, 5628. It asserted for the first time that under its "reading of the agreements," "Nuvia's royalty provisions will have no application to cores sold and/or distributed by Qualcomm regardless of ARM's theory regarding when or how the development may have started prior to this acquisition." Appx7122-7123. It nonetheless formally requested Arm's consent to assignment pursuant to the Nuvia ALA. Appx7123. Arm reiterated it would "consent to the assignment of designs created under" Nuvia's ALA if Qualcomm agreed to the terms of that ALA, since "it appears uncontested that such designs were created pursuant to" the Nuvia ALA. Appx7125. Qualcomm continued to refuse, deeming it "unfair" that it would have to pay Nuvia's "higher" ALA rates to use "Nuvia's work product." Appx7127. Ultimately, Arm exercised its right to decline consent. Appx7117, 7125, 5585-5586.

Qualcomm and Nuvia completed the acquisition and transferred Nuvia's pre-acquisition code to Qualcomm anyway. Appx8792, 5855, 5858, 6047. Qualcomm projected that this circumvention of the Nuvia ALA rates would cause Arm to lose up to $1.4 billion annually in royalties. Appx6283. Because the acquisition and transfer constituted a material breach of the Nuvia ALA, Arm exercised its right to terminate, which neither Qualcomm nor Nuvia contested at the time. Appx6883, 5843-5844, 6285, 6842. This was the first time in at least two decades that Arm had terminated a licensing agreement for this type of material breach. Appx5587-5588.

9

#### 4. *Nuvia and Qualcomm further breached the Nuvia ALA by failing to stop using Nuvia's pre-acquisition code*

Arm's termination of the Nuvia ALA triggered Nuvia's obligation to stop using "ARM Technology" and "ARM Confidential Information," including "derivatives" of "ARM Technology." Appx6849. Nuvia's pre-acquisition code was a derivative of Arm Technology. It was an in-progress Architecture Compliant Core, and an Architecture Compliant Core was expressly described as a derivative of Arm Technology, Appx6836. It was also derivative of the instructions in the Arm ARM. Nuvia was thus required to stop using that code. As Nuvia's "representative," Qualcomm sent a certification of compliance with the Nuvia ALA's termination obligations. Appx6037, 6884-6885.

Despite that certification, Qualcomm and Nuvia "used that technology from Nuvia" in "Qualcomm products." Appx5855, 5858, 5998, 6304 (Qualcomm agreeing it "didn't swap out the RTL that Nuvia had written" under the Nuvia ALA); Appx6292 (Qualcomm agreeing it "announced that Nuvia's CPUs would be integrated into Qualcomm products" and "used the Nuvia technology"). That Nuvia code remains in cores Qualcomm sells to this day, including Qualcomm's "Snapdragon X Elite" chip, which Qualcomm has touted as "the AI supercharged platform to revolutionize the PC." Appx6255-6256, 5858, 5998, 6307, 8507.

10

**B.     Procedural History**

### 1.     *Arm sued Nuvia and Qualcomm for breach of the Nuvia ALA and Qualcomm counterclaimed for declaratory judgment*

In 2022, Arm sued Qualcomm and Nuvia, marking the first time Arm sued a licensee in its 35-year history.  Appx0028-0075, 5669-5670.  Arm sought specific performance requiring Qualcomm and Nuvia to comply with the Nuvia ALA's termination provisions—that is, to stop using and to return or destroy the pre-acquisition Nuvia code in Qualcomm's cores.  Appx0043-0045.  Qualcomm filed a counterclaim for declaratory judgment that Qualcomm's cores incorporating pre-acquisition Nuvia code were licensed under the Qualcomm ALA.  Appx0363-0364.

A jury trial was held in 2024.  After the close of evidence, the parties moved for judgment as a matter of law.  Arm argued, among other things, that it was entitled to judgment on Qualcomm's declaratory-judgment counterclaim in light of the Qualcomm ALA's "unambiguous" language.  Appx6330-6331.  Qualcomm sought judgment on the same issue.  Appx6326-6329.  The district court deferred ruling, sending that counterclaim and Arm's breach claims to the jury.

The jury deadlocked on whether Nuvia had breached the Nuvia ALA.  Appx6564-6565.  It found, however, that (1) Arm had not proven that Qualcomm breached the Nuvia ALA, and (2) Qualcomm had proven that "the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA."  Appx6565, 0001-0003.

### 2. *The district court granted Nuvia judgment on Arm's breach claim and denied Arm judgment on all other claims*

The district court denied Arm's JMOL motion on the adverse jury verdicts and granted Nuvia's motion on Arm's breach claim. Appx0004-0021, 0022.

Qualcomm's declaratory-judgment counterclaim: The court concluded the jury was permitted to interpret the Qualcomm ALA in Qualcomm's favor and find that Qualcomm's cores were licensed because part of their development occurred at Qualcomm. In reaching this conclusion, the court did not interpret the ALA's language. Instead, it concluded that by opposing summary judgment on this counterclaim and agreeing to jury instructions about contract interpretation, Arm had conceded both that the Qualcomm ALA was ambiguous and that the jury could resolve that ambiguity. Appx0009-0014.

Arm's breach claim against Qualcomm: The court denied Arm judgment on its claim that Qualcomm breached the Nuvia ALA. Appx0014-0016. In so concluding, the court rejected Arm's argument that "Qualcomm assumed the Nuvia ALA explicitly in order to use Nuvia's CPU designs" because Qualcomm's own ALA did not allow it to use those designs. Appx0014.

Arm's breach claim against Nuvia: The jury's deadlock on Arm's breach claim against Nuvia would have ordinarily required a new trial. But the court ruled Arm had failed to present sufficient evidence of harm, thus warranting judgment for Qualcomm.

12

The court did not reject Arm's argument that "evidence in the record shows that Nuvia's breach caused Arm to lose royalty payments." Appx0019. Instead, it concluded Arm was "foreclosed" from pursuing that theory because it purportedly had not disclosed it during discovery. Appx0019-0020. As to Arm's separate theory that the breach harmed its licensing ecosystem, the court deemed Arm's evidence insufficient because it did not come from "third-party market participants" and competing evidence "undermine[d]" it. Appx0018.

Given its harm ruling, the court did not address whether judgment was warranted on the element of breach. Appx0020.

## SUMMARY OF ARGUMENT

I.    The district court erred in denying Arm judgment on whether Qualcomm's ALA covers Qualcomm's cores containing pre-acquisition Nuvia code. The Qualcomm ALA is unambiguous:  Qualcomm's license to use Arm's technology is limited to making Architecture Compliant Cores that are developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) using no "Arm technology" other than "Arm Technology"—that is, technology Arm delivered to Qualcomm under the Qualcomm ALA. Qualcomm's cores containing Nuvia code satisfy none of those requirements. Rather, that Nuvia code was developed (1) under the licenses granted in the Nuvia ALA, (2) by and for

Nuvia, and (3) using Arm's technology that was delivered under another ALA and thus fell outside the Qualcomm ALA's narrow definition of "Arm Technology."

The district court failed to interpret the Qualcomm ALA to reach this conclusion because it concluded Arm had conceded the ALA was ambiguous and therefore presented a jury issue. Even had Arm done so (it did not), that would not have mattered. The JMOL inquiry applies correct law, not instructed law—and the meaning of the Qualcomm ALA was for the court to decide. Regardless, Arm consistently argued the ALA was unambiguous and presented a legal question. Given its error, the district court never conducted a proper, text-centered inquiry into the ALA's meaning. Conducting that inquiry confirms judgment for Arm is warranted.

II.   In granting Nuvia judgment as a matter of law on Arm's breach claim on the ground that Arm had not established harm, the district court again ignored well-established Rule 50 standards. Arm is entitled to a new trial on this claim.

There was ample evidence offered by both parties that Arm lost royalties through breach of the Nuvia ALA—and defendants never objected or requested a limiting instruction on that evidence. Under those circumstances, the jury was entitled to consider that evidence for all purposes, and the district court was obligated to assess it in the light most favorable to Arm. The court nevertheless declined to consider that evidence based on its belief that Arm had not timely disclosed this

14

harm theory. That rationale is legally irrelevant. JMOL demands review of the record the jury actually considered; any objection to the absence of an instruction or the admission of evidence is irrelevant. And in any event, Arm timely disclosed its royalties theory of harm.

The jury also heard sufficient evidence of harm to Arm's licensing ecosystem. In concluding otherwise, the district court impermissibly discounted evidence as insufficiently probative, accorded greater weight to competing evidence, and drew inferences against Arm. Finally, Arm presented sufficient evidence of harm based on the breach of the Nuvia ALA alone; the district court erroneously dismissed this argument by confusing harm and damages.

Setting aside harm, a reasonable jury could have found the Nuvia ALA was breached. Nuvia's pre-acquisition code constituted a "derivative" of "ARM Technology": Nuvia wrote it in the process of making an Architecture Compliant Core, which the Nuvia ALA expressly identified as a derivative of Arm Technology, and that code implemented all the instructions of the Arm ARM, which is also expressly identified as Arm Technology under the Nuvia ALA. That code was therefore subject to section 15.1(a)'s termination obligations. Failure to return or destroy it thus breached the Nuvia ALA.

III.   If the Court grants relief on either of the above claims, a new trial is required on any remaining claims.

15

First, the district court's errors on the Qualcomm-ALA counterclaim impacted the outcome of both of Arm's breach claims, thus requiring that they be tried again. The court opined that Qualcomm's ALA "undermined" Arm's theory of harm on breach of the Nuvia ALA. It also ruled that Arm failed to establish that Qualcomm had assumed the benefits of the Nuvia ALA such that it could breach that ALA, a conclusion that would be impossible to reach had Arm prevailed on the Qualcomm-ALA counterclaim. Indeed, defendants themselves conceded the factual connection among all three claims by invoking the Qualcomm ALA as a defense to both of Arm's breach claims. Those connections easily satisfy this Court's rule that vacatur is required if there is *any* possibility an error infected the outcome of other claims.

Second, a new trial on Arm's breach claim against Nuvia would require a new trial on any remaining claims. A partial new trial is impermissible unless the claim to be retried "is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 500 (1931). That high standard is not met when claims have overlapping evidence or require the jury to make the same factual determinations. Here, all three claims require examining the same facts on the creation of Nuvia's code, its transmission to Qualcomm, and its use in Qualcomm's products.

**STANDARD OF REVIEW**

This Court "exercise[s] plenary review of an order granting or denying a motion for judgment as a matter of law." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id.* The Court reviews case-management and discovery rulings for abuse of discretion. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012).

**ARGUMENT**

I.    **THE DISTRICT COURT ERRED IN DENYING ARM JUDGMENT ON WHETHER QUALCOMM'S ALA COVERS CORES CONTAINING PRE-ACQUISITION NUVIA CODE**

Under the California law governing the Qualcomm ALA (Appx6915), "[t]he threshold question is whether the contract is ambiguous—that is, reasonably susceptible to more than one interpretation." *Scheenstra v. Cal. Dairies, Inc.*, 213 Cal. App. 4th 370, 389 (2013). "The analysis of ambiguity" looks to "the words of the contract" as well as "any proffered extrinsic evidence that is relevant to show whether the contractual language is reasonably susceptible to a particular meaning." *Id.* at 390. "If the court determines there is no ambiguity—that is, the language is

17

reasonably susceptible to only one interpretation—then the judicial inquiry into meaning is finished and the clear and explicit meaning governs." *Id.*

Even if a contract is ambiguous, its interpretation remains "a question of law" for the court "when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). That is so "even when conflicting inferences may be drawn from the undisputed extrinsic evidence." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126-27 (2008). Contractual interpretation becomes a jury question only when there is a "factual conflict" in the extrinsic evidence requiring a "credibility determination" to resolve. *Id.*

Under these principles, the district court erred in denying Arm judgment on the Qualcomm-ALA counterclaim. For Qualcomm's use of any "Arm technology" in its cores to be licensed, those cores must be developed "by or for" Qualcomm, under the licenses in Qualcomm's ALA, and using no "Arm technology" other than "Arm Technology"—defined as technology delivered by Arm to Qualcomm under the Qualcomm ALA. The undisputed trial evidence established that Qualcomm's cores include substantial amounts of pre-acquisition Nuvia code. In creating that code, Nuvia used Arm's technology—but that use of Arm's technology did not fall under the scope of the Qualcomm ALA. To the contrary, the code was written by

18

and for Nuvia, under the licenses granted in the Nuvia ALA, using technology delivered by Arm to Nuvia. Qualcomm's cores containing that Nuvia code thus cannot be licensed under the unambiguous terms of the Qualcomm ALA.

The district court abandoned its responsibility to interpret the unambiguous Qualcomm ALA and failed to reach the conclusion the evidence compelled. Instead, it reasoned Arm had conceded that the ALA was ambiguous and for the jury to interpret. And, according to the court, the jury was entitled to accept Qualcomm's reading because Qualcomm had presented *some* extrinsic evidence on the topic. That was legal error. First, courts considering judgment as a matter of law must apply the law as it is, not as instructed; thus, the court was obligated to determine for itself whether the ALA's interpretation was for the jury. (And in any event, Arm consistently argued the ALA was unambiguous.) Second, even had the district court conducted a proper contract-interpretation analysis, none of the extrinsic evidence the court cited renders the ALA ambiguous: that evidence was not competent to determine contractual meaning, and it contradicted the plain language of the ALA. Finally, even were the ALA ambiguous, resolving that ambiguity would still be a question of law—one that should be resolved in Arm's favor—because none of the extrinsic evidence presents a factual question under California law.

19

**A.    Qualcomm's Cores Containing Pre-Acquisition Nuvia Code Are Not Licensed Under The Qualcomm ALA**

*1.    The unambiguous Qualcomm ALA does not allow Qualcomm to use Nuvia code that was created using Arm technology delivered under the Nuvia ALA*

*a.    The Qualcomm ALA covers only designs created by or for Qualcomm, using Arm technology delivered to Qualcomm under the Qualcomm ALA*

Qualcomm's ability to use Arm's technology to design Architecture Compliant Cores is carefully limited. For that use to be licensed, an Architecture Compliant Core must be "developed by or for Licensee" (i.e., Qualcomm) "under the licenses granted in this Annex 1" to the ALA. Appx6932. And the "Arm Technology" Qualcomm is allowed to use is limited to "the technology identified in each [ALA] Annex" and "any Extensions and Updates thereto" that are "delivered by ARM or a Controlling Party *to Licensee*" (i.e., Qualcomm) "under this ALA." Appx6886 (emphasis added). Accordingly, technology Arm delivered to another party under another ALA would not qualify as Arm Technology under the Qualcomm ALA. Were there any doubt as to that question, the ALA expressly states that "[i]n no event shall the licenses granted" in that document "be construed as granting" Qualcomm "a license to use any ARM technology"—a broad, generic term—"except the Arm Technology"—a term limited to technology delivered by Arm *to Qualcomm under the Qualcomm ALA*. Appx6891.

20

This "clear and explicit" language "governs" the ALA's meaning as a matter of law. *State v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012). Qualcomm is permitted to design and manufacture Architecture Compliant Cores only if they were "developed by or for" Qualcomm, under the licenses in the Qualcomm ALA, using the specific technology Arm delivered to Qualcomm pursuant to that ALA. It is not permitted to use Architecture Compliant Cores that were developed by or for another party, using technology Arm delivered to another party, pursuant to another ALA.

While California law instructs that "a contract apparently unambiguous on its face may still contain a latent ambiguity that can only be exposed by extrinsic evidence" (*Wolf*, 162 Cal. App. 4th at 1133), all relevant extrinsic evidence aligns with the ALA's plain text. Despite having the burden on its counterclaim (Appx6403, 0002), Qualcomm elicited no extrinsic evidence of the parties' intent at the time of execution. But Arm did: Qualcomm's legal counsel Jonathan Weiser, who had participated in negotiations over Qualcomm's ALA, admitted that Qualcomm's license was "for the development of a microprocessor core by, or for Qualcomm under the license granted to Qualcomm." Appx6032.

The parties' "predispute, postcontracting conduct" is in accord. *Wolf*, 162 Cal. App. 4th at 1133 (such evidence relevant to determining ambiguity). After informing Arm of its goal to "have the … former Nuvia employees continue their activities under the Qualcomm ALA and TLA" (Appx9334), Qualcomm agreed

21

consent was required to transfer Nuvia's work-product and asked Arm to send the "three-way agreement" memorializing that consent. Appx7116, 7119-7120; *see* Appx5628 (Arm's Paul Williamson testifying that Qualcomm "indicated an understanding that consent was required" to transfer Nuvia code). Indeed, Qualcomm had previously agreed to a rate renegotiation on a similar agreement under similar circumstances. Appx5582-5586, 5628. Arm, for its part, consistently told Qualcomm the Qualcomm ALA did not permit use of Nuvia's designs absent amendment of the Qualcomm ALA. Appx7117, 7121. While Qualcomm eventually asserted its contrary reading (Appx7122-7123), that was only after the royalty dispute had arisen, rendering those subsequent communications irrelevant. *Wolf*, 162 Cal. App. 4th at 1133.

> **b.** *The undisputed trial evidence showed Qualcomm's cores contain pre-acquisition code developed by and for Nuvia that used Arm's technology delivered under the Nuvia ALA*

The undisputed trial evidence established that Qualcomm's cores incorporate code Nuvia made (1) by and for Nuvia, not "by or for" Qualcomm; (2) under the terms of the Nuvia ALA, not the Qualcomm ALA; and (3) using technology Arm delivered to Nuvia, not Qualcomm, and was thus outside the scope of "Arm Technology." Appx6886, 6932. Each of those facts independently means that Qualcomm's use of that code is not licensed under its ALA.

After Nuvia signed its own ALA giving "Nuvia a license to develop Architecture Compliant Cores," Nuvia used the technology Arm delivered under that ALA to "work[] on building some RTL code" for purposes of creating a core known as "Phoenix." Appx6029-6030, 5836. Qualcomm's and Nuvia's witnesses agreed Nuvia performed this pre-acquisition work under Nuvia's "own license" with Arm, not Qualcomm's ALA, and that the work "was not[,] at that time, ... being done by or for Qualcomm." Appx6031-6032, 6269.

Following the Nuvia acquisition, Qualcomm took that code and imported it into its cores. At trial, Qualcomm employees confirmed they "didn't swap out the RTL that Nuvia had written" and instead "used that technology from Nuvia" in "Qualcomm products." Appx5855; *see* Appx5858 (Nuvia witness agreeing that "there are some elements of th[e] Nuvia Phoenix code in the compute and mobile platforms at Qualcomm"); Appx6292 (similar); Appx8507 (similar). Arm's technology expert presented an unrebutted analysis showing each Qualcomm core at issue contained code identical to pre-acquisition Nuvia code (between 20% and 70% depending on the core). Appx5980-5984. Qualcomm's own expert agreed Nuvia wrote lines of code that appeared in Qualcomm's cores. Appx6210. Indeed, Qualcomm acknowledged in its post-trial briefing that its cores "contained Nuvia RTL." Appx6700.

23

The only conclusion this evidence supports is that Qualcomm's cores contain pre-acquisition Nuvia code that used technology Arm delivered to Nuvia, and that Nuvia designed for Nuvia alone, under the terms of Nuvia's ALA.  Qualcomm thus did not carry its burden of establishing that its cores containing that code are licensed under the Qualcomm ALA—a separate contract, executed between separate parties, at a different time.

### 2. *Qualcomm's contrary reading contradicts the ALA's plain language*

Qualcomm did not dispute its cores contain pre-acquisition Nuvia code developed under the Nuvia ALA.  *E.g.*, Appx6701 (conceding cores contained "acquired RTL").  Instead, it argued the Qualcomm ALA permits that unlicensed use of Arm's technology so long as a single subsequent step of core development occurred at Qualcomm.  Appx6700-6701.  Despite having the burden of proof on the Qualcomm ALA's applicability, Qualcomm did not even attempt to tether this position to the ALA's text.  Nor can it.

Qualcomm's interpretation impermissibly reads out of the ALA the requirement that an Architecture Compliant Core be "developed by or for" Qualcomm, under the licenses granted in the Qualcomm ALA, using only "Arm Technology" delivered to Qualcomm pursuant to Qualcomm's ALA.  Appx6886, 6932; *see City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) ("Courts must interpret contractual language in a manner

which gives force and effect to *every* provision.").  The ALA contains no qualifying language suggesting that only some parts of an Architecture Compliant Core need satisfy those requirements.  Nor is there any suggestion that Nuvia's code falls outside these requirements; to the contrary, the ALA expressly deems "RTL design" to be a step in developing an Architecture Compliant Core.  Appx6935.  Just like all other steps of development, that code design must occur "subject to the terms of the" Qualcomm "ALA and Annex 1," "us[ing] the applicable Arm Technology," and done "by or for" Qualcomm.

No other portion of the ALA supports Qualcomm's view that an in-progress Architecture Compliant Core licensed under the Nuvia ALA can become licensed under the Qualcomm ALA merely if *some* subsequent portion of its development occurs at Qualcomm.  Qualcomm's only argument to the contrary relies on the provision giving it the right "to design and have designed … including all stages of implementation from specification through RTL design … Architecture Compliant Cores."  Appx6935, 6696.  But that simply allows Qualcomm to design or have designed an Architecture Compliant Core *under the terms of Qualcomm's ALA*.  Confirming that, this provision is expressly "subject to Clause 2.2," which "does not grant to" any "Designer" Qualcomm might work with "any license in respect of the Arm Technology for any purpose other than for designing on behalf of" Qualcomm.  Appx6935, 6890.  That language precludes Qualcomm's view that it can co-opt

Arm's technology that is unlicensed under the Qualcomm ALA. The "all stages of implementation" sentence actually refutes Qualcomm's argument, because it states that "RTL design" is one of the processes that must satisfy the requirements of the Qualcomm ALA. *Supra* p.25.

Nor does it matter that Nuvia's code was licensed under Nuvia's ALA when created. The Nuvia and Qualcomm ALAs are not interchangeable; they are separate contracts, executed six years apart, between separate parties. And both ALAs confirm that work-product using Arm's technology cannot be passed from one ALA to another. Nuvia's ALA prevented it from transferring its rights, including through an acquisition, without Arm's consent. Appx6850. Qualcomm's ALA warns that "[i]n no event shall the licenses granted" in that document "be construed as granting" Qualcomm "a license to use any ARM technology except the Arm Technology" that Arm delivered to Qualcomm under the Qualcomm ALA; there is no exception for Arm's technology that might fall under *another* company's license. Appx6891. And again, Qualcomm cannot sweep Nuvia's code under its "design and have designed" right: that right is limited to designs made "on behalf of" Qualcomm, Appx6935, 6890, yet Nuvia's code was designed for Nuvia alone, when it was still a separate entity, *supra* p.23.

Finally, Qualcomm's reading should be rejected because it would produce "absurd" and "inequitable" results. *ASP Props. Grp., L.P. v. Fard, Inc.*, 133 Cal.

26

App. 4th 1257, 1269 (2005). Qualcomm's position would permit 99% of a product's development to use technology expressly excluded from the scope of a license, so long as 1% of that product's development is licensed. That cannot be characterized as the "reasonable expectation" of these commercially sophisticated parties that scrupulously protect their proprietary technology. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 831-32 (2007).

### B.    The District Court Erred By Failing To Interpret The Qualcomm ALA Consistent With The Unambiguous Language And Undisputed Evidence

The district court began its analysis by observing that there was evidence that development on Qualcomm's cores began after the acquisition. Appx0009-0010. That was the wrong question: what matters is not when the *cores* were designed, but when and under which ALA the *code* in those cores was designed. *Supra* pp.20-27. The district court's focus on core development is relevant only if the Qualcomm ALA can reasonably be interpreted as Qualcomm erroneously demands: that is, as providing a license for cores incorporating pre-acquisition Nuvia code.[2]

The district court concluded that the jury was entitled to accept that interpretation. Because the ALA is unambiguous, that was error. *Cooper Distrib.*

---

[2] To the extent the district court's statement was a conclusion that all the *code* in Qualcomm's cores was developed post-acquisition, that would be irreconcilable with the undisputed trial evidence (*supra* pp.22-24) and Qualcomm's admission that its cores contain pre-acquisition code (*supra* p.24).

27

*Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 279 (3d Cir. 1995) (reversing denial of JMOL on breach-of-contract claim where court erroneously concluded contract was ambiguous). The court's justification for reserving that question for the jury—that Arm had purportedly conceded the ALA was ambiguous—is both legally irrelevant and factually wrong. And none of the trial evidence the court identified supports Qualcomm's reading anyway.

### 1. *Neither summary-judgment proceedings nor jury instructions precluded Arm's JMOL request*

The district court reasoned that Arm had conceded ambiguity through (1) opposing summary judgment and (2) agreeing to instructions that authorized the jury to interpret the contract. Appx0011-0012. Even had Arm so conceded, that would be irrelevant: a court considering JMOL must apply the law as it is, regardless of what the jury instructions say. Regardless, Arm consistently treated the Qualcomm ALA as unambiguous.

### a. *The judgment-as-a-matter-of-law inquiry applies correct law, not instructed law*

Arm's purported failure to object to jury instructions is irrelevant because Arm appeals the denial of JMOL, not a jury-instruction error. "[T]he failure to object to an instruction does not render the instruction the 'law of the case' for purposes of appellate review of the denial of a directed verdict or judgment notwithstanding the verdict." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 120

28

(1988). Instead, a court's task is to assess whether "the evidence presented" at trial would "suffice, *as a matter of law*, to support a jury verdict under [a] *properly formulated* defense" or legal theory. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513-14 (1988) (emphases added). This is so even if a party "failed to object to jury instructions that expressed the defense differently, and in a fashion that would support a verdict." *Id.*; *see Pincay v. Andrews*, 238 F.3d 1106, 1109 n.4 (9th Cir. 2001) ("when reviewing a motion for judgment as a matter of law, we apply the law as it should be, rather than the law as it was read to the jury"); *Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 826 (2d Cir. 1984) ("Although … counsel chose not to take exception to the instruction … , we must review the district judge's order in light of the applicable law which is controlling, and not what the trial court announces the law to be in [its] instructions." (quotation marks omitted)). It was thus error for the court to ignore Arm's JMOL argument, regardless of the jury instructions.

The court also reasoned that Arm had never presented to the jury its argument that "the Qualcomm ALA forbids the use of ARM technology, even if delivered as ARM Technology, when created under the Nuvia ALA." Appx0014. That statement reveals the court's misunderstanding of the Qualcomm ALA and Arm's position: *none* of Arm's technology qualifies as "Arm Technology" for purposes of the Qualcomm ALA unless it is "delivered by ARM … to *Licensee* [i.e., Qualcomm] under *this* [i.e., the Qualcomm] ALA." Appx6886, 6891, 6932. It makes no

difference whether Arm's technology might have qualified "as Arm Technology" under another ALA, like Nuvia's. Appx0014. And because this is a purely legal argument, there was no need for Arm to present it to the jury. Arm only had to make this argument to the district court—and it did. Appx6331, 6642-6647.

> ### b. *Regardless, Arm made clear its position that the Qualcomm ALA was unambiguous*

The factual basis for the district court's conclusion is also wrong: Arm never conceded ambiguity. Rather, Arm consistently stated the *opposite*: that the Qualcomm ALA is unambiguous. That much is apparent from Arm's Rule 50(a) motion at the close of evidence, where it argued for JMOL on "whether or not there is a license under the Qualcomm ALA" based on "the *unambiguous* contract." Appx6330-6331 (emphasis added).

The court also misconstrued Arm's summary-judgment opposition. There too, Arm stated that "the *plain language* of Qualcomm's ALA disclaims a license to Arm technology developed under another ALA." Appx3478 (emphasis added). The district court lifted out of context a sole sentence in Arm's brief that "if any doubt remain[ed]" on the Qualcomm ALA's meaning, "the parties' past practice and witness testimony" created "a genuine issue of fact." Appx0011 (citing Appx3479). But that was an alternative argument if the district court disagreed with Arm's legal arguments. Appx3479. At a post-trial hearing, Arm explained further that summary judgment would have been premature because at that pre-trial juncture, it remained

30

disputed "whether or not [Qualcomm] w[as] using the Nuvia code." Appx6792. To the extent the district court's complaint was that Arm did not affirmatively seek summary judgment, this Court has rejected the notion that failing to move for summary judgment constitutes waiver. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 90 n.5 (3d Cir. 2000).

Nor did the instructions sending this issue to the jury amount to a concession of ambiguity. Appx0011-0012. Before the charge conference, the court had heard, yet deferred ruling on, Arm's Rule 50(a) motion requesting judgment as a matter of law. The court thus knew the substance of Arm's legal argument and its implication on the jury instructions, yet still committed the interpretative question to the jury. It would have been futile for Arm to insist again that the court decide the contract-interpretation question and effectively direct a verdict via the jury instructions. Under those circumstances, even if the jury instructions were somehow relevant to Arm's JMOL motion, Arm's non-objection to those instructions cannot establish waiver. *Cf. Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 550 (3d Cir. 1999) (no forfeiture "when a party has previously made its position clear to the trial judge and any further attempt to change the judge's mind would have been futile" (quotation marks omitted)); 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2553 (3d ed. 2025) (same).

31

### 2. *No other part of the court's ruling supports the conclusion that the ALA can be interpreted as Qualcomm demands*

The district court thus erred in concluding the Qualcomm ALA is ambiguous based solely on Arm's purported concessions. Nothing else in the district court's ruling supports that conclusion either. A determination of ambiguity must center on "the words of the contract." *Scheenstra*, 213 Cal. App. 4th at 390. Even when extrinsic evidence is proffered, it must be examined with "the contractual language" to determine whether that language "is reasonably susceptible to a particular meaning." *Id.* Yet the court never examined the Qualcomm ALA's language, much less used the extrinsic evidence to construe it. Appx0009-0016. Absent that analysis, the court's consideration of extrinsic evidence in isolation cannot support judgment for Qualcomm.

Even had this extrinsic evidence been properly considered alongside the contractual language, it would not suggest ambiguity—let alone an ambiguity that turns on conflicting evidence, which, under California law, is the only way a contract question may reach a jury. *Wolf*, 162 Cal. App. 4th at 1126-27. To start, "[p]arol evidence" may not be admitted "to flatly contradict the express terms of the agreement." *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (1992). Here, no amount of extrinsic evidence can transform "by or for Qualcomm" to "by or for Nuvia," or "under this [Qualcomm] ALA" to "under the Nuvia ALA."

32

The district court's cited evidence fails for other reasons.  Most of it constitutes internal Arm discussions and unspoken beliefs of then-Nuvia employees, neither of which were ever communicated to the other party.  Appx0012 (citing Appx8783-8788, 8723-8724, 8719-8721, 8874-8878, 8879-8885, 5902-5903).  Such "uncommunicated subjective intent is irrelevant" to discerning the parties' *mutual* intent.  *Reigelsperger v. Siller*, 40 Cal. 4th 574, 579 (2007); *see Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 960 (2003) ("[c]onversations between" former employees of one contracting party "do not reflect" that party's "objective intent, disclosed to" other contracting party).[3]

The only communication *between* Qualcomm and Arm the district court cited was a letter written years after the Qualcomm ALA was negotiated, and only after Qualcomm realized it needed Nuvia engineers to create its cores.  There, Qualcomm told Arm it intended to "have the … former Nuvia employees continue their

---

[3] Assessing these communications in context confirms the inference Qualcomm and the district court would draw from them is irreconcilable with the ALA's plain text.  For instance, while the district court focused on an Arm employee's statement that Qualcomm had a "reasonably bombproof arch[itecture] licen[s]e," that employee corrected his misunderstanding after a colleague reminded him that, under the Nuvia ALA, Nuvia-created "microarchitecture" "cannot be transferred without" Arm's "permission," notwithstanding the Qualcomm ALA.  Appx8787.  Other communications the court highlighted simply expressed Arm employees' internal view that former Nuvia employees' *post*-acquisition work would fall under Qualcomm's license.  Appx8723-8724, 8719-8721, 8874-8878.

activities under the Qualcomm ALA and TLA." Appx9334.  Yet even if the parties "dispute the inferences to be drawn" from that statement, it does not raise any conflict in "the evidentiary facts" bearing on "credibility" and thus creates no *factual* issue. *Med. Operations Mgmt., Inc. v. Nat'l Health Lab'ys, Inc.*, 176 Cal. App. 3d 886, 892 (1986).  The district court thus erred in treating this evidence as reason to defer to the jury.  *Wolf*, 162 Cal. App. 4th at 1134 (contract-interpretation issue erroneously sent to jury when meaning "was not dependent on the credibility of conflicting extrinsic evidence").

Moreover, as explained above (*supra* pp.21-22), this letter and the parties' subsequent communications support the opposite inference:  that Qualcomm knew it needed Arm's "consent" to take this course of action.  Qualcomm asked if Arm had "concerns" with its proposal—negating any suggestion that Qualcomm believed it had a contractual right to it—and, in answer to Arm's response that Arm's "consent" was required via "three-way agreement" (Appx7117), Qualcomm asked Arm to send that "three-way agreement" "promptly" (Appx7119-7120).  It was only after Arm asserted its right to Nuvia's royalty rates, raising a dispute, that Qualcomm about-faced and advanced a different reading of its ALA.  Appx7122-7123.  None of that conduct supports Qualcomm's litigation position that it had the definitive right to use Nuvia's pre-acquisition code.  Finally, even if this letter could be reasonably interpreted as Qualcomm demands, that cannot override the ALA's

34

contrary "plain meaning." *Wolf*, 162 Cal. App. 4th at 1134-35 (contract's "plain meaning" supported only one interpretation despite extrinsic evidence supporting competing interpretation).

## II.   THE DISTRICT COURT ERRED IN GRANTING NUVIA JUDGMENT ON ARM'S BREACH CLAIM

Because the jury's deadlock on Arm's Nuvia breach claim triggered a mistrial, Arm was entitled to a new trial on that claim. *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989). Judgment for Nuvia instead of a new trial would have been proper "only if, as a matter of law, the record [was] critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief" to Arm. *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015). Nuvia did not clear that high bar; in ruling otherwise, the district court improperly usurped the jury's role.

### A.   A Reasonable Jury Could Have Found Arm Proved Harm From The Breach Of The Nuvia ALA

Arm showed that the breach of the Nuvia ALA harmed Arm in several ways. First, that breach deprived Arm of its entitled royalties—a fact defendants themselves raised in their opening and closing statements. Had Nuvia wanted to prevent the jury from considering that evidence for harm, it should have objected when Arm introduced it or requested a limiting instruction. It did neither. Absent a limiting instruction, the district court's after-the-fact culling of the record violated

the JMOL standard.   That error is compounded by the district court's incorrect preservation conclusion:   contrary to the court's view, Arm timely disclosed this theory of harm.   Second, the district court impermissibly weighed the evidence on Arm's licensing-ecosystem theory of harm.   Third, under California law, breach of the Nuvia ALA is itself sufficient to establish harm.   Each of these theories independently supports a finding that Arm suffered harm.

### 1. *Absent a limiting instruction, the jury was entitled to consider admitted lost-royalties evidence to find harm*

The record is clear that Arm lost royalties through breach of the Nuvia ALA. In response to Qualcomm's request for consent to transfer Nuvia's pre-acquisition code, Arm proposed Qualcomm pay Nuvia royalty rates, which were "multiple times higher" than Qualcomm rates.   Appx5582-5586, 5628, 5633, 7127.   That made sense:   Qualcomm would be reaping the benefit of technology Arm had provided Nuvia under the Nuvia ALA.   By deeming that proposal "unfair" (Appx7127) and unilaterally transferring Nuvia's code, defendants escaped billions in royalties. *Supra* p.9.

That breach caused Arm to lose royalties in another way.   Had defendants complied with the obligation to stop using Nuvia's code, Qualcomm would have needed to develop more of its own Architecture Compliant Cores from scratch. Appx5634.   In the meantime, it would have needed to use more Arm-designed cores pursuant to the Qualcomm TLA.   Those rates were higher than what Qualcomm paid

under its ALA. Appx5634. Arm initially estimated that Qualcomm would pay $50 million less per year as a result, Appx5698, 8874-8878, while Qualcomm calculated it would pay up to $1.4 billion less, Appx6282-6283, 7503.

Critically, much of the trial evidence on the "much higher" Nuvia royalty rates was introduced by defendants themselves. Appx6218; *see, e.g.*, Appx5652-5653, 5698. Lost royalties was also a key theme in defendants' opening and closing statements: in their own words, they "did not want to pay these very high rates." Appx6481; *see, e.g.*, Appx5548, 5550-5551.

When instructing the jury, the district court stated only that Arm must prove it had "suffered harm." Appx6407. Defendants never requested, and the court never gave, a limiting instruction precluding the jury from considering the royalty evidence it had heard when deciding whether Arm met that burden. Appx6379-6395, 6401-6409. To the contrary, defendants themselves introduced that royalty evidence without ever suggesting a limiting instruction was necessary. Absent any such instruction, the jury was entitled to consider the royalty evidence for all purposes—and the district court was required to view that evidence in Arm's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (Rule 50 motions require court to "review the record as a whole"); *Lightning Lube*, 4 F.3d at 1166.

37

### a. The district court wrongly imposed a retroactive limiting instruction that Nuvia never sought

Nuvia's primary challenge to Arm's royalty-harm evidence was not that the evidence was insufficient or that the district court legally erred by submitting harm to the jury. Appx6671. Rather, Nuvia urged the court to ignore the admitted royalties evidence for harm on case-management grounds. Appx6671. The district court agreed. Citing its authority to manage the case and impose discovery sanctions, the court concluded Arm was "foreclosed" from pursuing its royalties theory of harm because Arm had failed to show it had disclosed that theory in discovery; the court reasoned that allowing this purportedly "late-breaking shift" in Arm's theory of the case would have been "highly prejudicial" to Nuvia. Appx0019-0020.

In so ruling, the district court effectively imposed a retroactive limiting instruction on Arm's harm evidence, despite Nuvia's own unqualified introduction of that evidence and failure to seek any such instruction. But seeking judgment on such grounds, which "depend[] on a jury instruction that either was not objected to or was never requested," is improper because it "in essence asks the court to function as the jury in finding new facts and thus implicates … [S]eventh [A]mendment concerns." *Simmons v. City of Phila.*, 947 F.2d 1042, 1082 (3d Cir. 1991) (affirming denial of JNOV); *accord Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758

38

F.2d 613, 619 & n.1 (3d Cir. 1985) (motion for new trial not proper vehicle to assert error in jury instruction).

Thus, any contention that a party "presented [an] improper theory to the jury" based on admitted evidence is "waived" where the complaining party failed to object contemporaneously or "ask for a limiting instruction." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1372 (Fed. Cir. 2021) (quotation marks omitted). While the "possibility that the jury … heard or saw evidence that it should not have … may be complained of by means of other procedural vehicles," it "can play no part in determining whether, on the record actually made," a party is "entitled to judgment as a matter of law." *LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778, 785 (S.D.N.Y. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 869 (2d Cir. 1998) (brief that "challenged only evidentiary rulings and jury instructions … did not present any arguments as to why the court should grant JMOL")).

This conclusion follows not just from the purpose of JMOL, but also the longstanding rule that when evidence that would otherwise be inadmissible "is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible." *Diaz v. United States*, 223 U.S. 442, 450 (1912); *see E & R Erectors, Inc. v. Sec'y of Lab.*, 107 F.3d 157, 161 (3d Cir. 1997) (where a party "failed to object to [hearsay] evidence at the administrative hearing," it was "admissible as evidence" and "ha[d] whatever probative value that … the trier

39

of fact … reasonably accorded it"); *Trouser Corp. of Am. v. Goodman & Theise, Inc.*, 153 F.2d 284, 288 (3d Cir. 1946) ("Objection to competency is lost if the objecting party himself offers the same testimony as evidence.").

Those principles foreclose Nuvia's attempt to obtain JMOL. Nuvia itself presented much of the harm evidence of which it now complains—and emphasized it in both its opening and closing statements. *E.g.*, Appx5534, 5550, 6460. It failed to object to *any* royalty evidence when it was introduced by any party. Nor did Nuvia ever seek "an instruction limiting the jury's consideration" of such evidence for harm, *Simmons*, 947 F.2d at 1078—even though the parties requested limiting instructions on other evidence, *see, e.g.*, Appx6224-6226, 6379-6399. Nuvia thus cannot credibly claim prejudice or disavow the jury's right to consider that evidence for harm. The court erred in allowing Nuvia to "recast" its argument in this way and disregarding evidence that was presented to the jury based on a limitation the jury never heard. *Simmons*, 947 F.2d at 1077.

### b.    *Regardless, Arm preserved its lost-royalties theory of harm*

In any event, the premise for the district court's ruling is wrong: Arm timely disclosed its lost-royalties theory of harm. Harm to royalties was Arm's primary response to defendants' summary-judgment argument that Arm had failed to show harm in support of its specific-performance claim. Arm explained it would present evidence that it had "lost the higher royalties that Nuvia was obligated to pay under

the Nuvia ALA" to show harm.  Appx3467-3468.  Defendants' only reply was that this harm was "calculable" and thus could not support specific performance—not that it did not exist or could not be presented to the jury.  Appx4661.

That was far from the only time Arm alerted defendants to this theory.  In Arm's response to interrogatories, for example, Arm disclosed that "Arm's injuries from Defendants' breach of the Nuvia ALA are not limited to Defendants' *anticipated underpayment of royalties* owed to Arm."  Appx5332-5334 (emphasis added).  In that same response, Arm quoted Qualcomm's Answer and Amended Counterclaim statement that "Qualcomm will in the future pay to ARM the lower royalty rate under its ALA for [Defendants'] custom CPUs, rather than the higher royalty rates under Qualcomm's TLA."  Appx5333-5334; Appx5322-5325 (pre-trial letter to district court attaching both submissions).  And in a filed expert report, one of Arm's remedies experts described the harms Arm would suffer "[i]f Qualcomm could acquire Nuvia, repurpose Nuvia's development work under the ALA for a different purpose, and then commercialize that work under Qualcomm's own *lower royalty rates*."  Appx2109 (emphasis added).

These disclosures foreclose the district court's conclusion that Nuvia had no opportunity to "prepar[e] a defense" to Arm's lost-royalties theory before trial.  Appx0019-0020.  While the district court instructed Arm the morning of trial to submit proof of timely disclosure, Appx5501-5502, Arm reasonably understood this

41

instruction to be mooted by Nuvia's failure to object at trial to any royalties evidence, its failure to ask for a limiting instruction, and its own introduction of this evidence.

### c. Even were this an issue of discovery and case management, the district court abused its discretion

Even if the court's ruling were properly viewed as one implicating discovery and case management rather than a misapplication of Rule 50 standards, the court still erred. As the very decision the court cited explains, "exclusion of critical evidence is an extreme sanction, and thus, a district court's discretion is not unlimited." *Meritor*, 696 F.3d at 297 (internal quotation marks omitted); Appx0019 (district court citing *Meritor*). The *Meritor* factors (which the district court never discussed) show the court exceeded the bounds of any discretion it had. Nuvia could not possibly have been "prejudice[ed] or surprise[ed]" by the allowance of a theory it affirmatively pursued. *Meritor*, 696 F.3d at 298; *see supra* pp.40-42. Admission of that theory would not have "disrupt[ed] the orderly and efficient trial," *Meritor*, 696 F.3d at 298; to the contrary, trial proceeded with that evidence offered in full without incident. There is no evidence of "bad faith" or "willfulness" on Arm's part, *id.*; when Nuvia failed to object and introduced royalty evidence itself, Arm reasonably believed all parties agreed to its unlimited use. And "most significant[ly]," Arm's lost-royalties theory was critically "importan[t]" to Arm's harm showing. *Id.* The district court thus abused whatever discretion it had in precluding Arm from pursuing its lost-royalties theory.

42

To the extent the district court deemed its ruling a discovery sanction under Federal Rule of Civil Procedure 37(c), the court abused its discretion in that respect too. Appx0019 (citing Fed. R. Civ. P. 37(c)). The district court failed to analyze whether Arm's purported failure to disclose was "substantially justified" and failed to give Arm an opportunity to show harmlessness (a showing Arm would have successfully made, *supra* pp.40-42), as Rule 37(c) requires. Appx0019-0020. Because the court did not "discuss or analyze the 'substantial justification' standard in imposing sanctions," the sanction cannot stand. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 (3d Cir. 2009).

### 2. *In discounting evidence of harm to Arm's ecosystem, the district court usurped the role of the jury*

Arm also presented far more than the required "minimum quantity of evidence" (*Lemington*, 777 F.3d at 626) supporting an independent theory of harm: breach of the Nuvia ALA undermined Arm's licensing ecosystem. Arm's business turns on licensing, meaning that Arm's success depends on its ability to trust that licensees will comply with their contractual obligations and ship only licensed products. Appx5668-5671. Yet Qualcomm and Nuvia developed cores containing code that was designed under the Nuvia ALA—code defendants were contractually required, but refused, to cease using upon termination of that ALA (Appx6859). That undermined Arm's licensing ecosystem by putting unlicensed technology into the market and signaling to other parties that Arm's licensing agreements may be

breached without consequence.  Under California law, such evidence establishes harm.  *See DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, No. 1-04-cv-31829, 2012 WL 12987159, at *26-27 (Cal. Super. Ct. Jan. 9, 2012); *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 1477373, at *3 (N.D. Cal. Apr. 25, 2017); *cf. Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 43-44 (2d Cir. 1986) (unauthorized use of trademark establishes harm from infringement).

The record contains ample evidence of such harm.  Arm's CEO testified that because "Arm is an IP company … contracts are the only tool that we have to protect our inventions, and having them licensed appropriately is key."  Appx5682.  Arm thus felt it was "incredibly important" to enforce the Nuvia ALA where there was "unlicensed technology … being used in an end product."  Appx5682; *see, e.g.*, Appx5684 ("[T]he unlicensed technology that exist[s] inside these Qualcomm products ... the harm is that it doesn't reflect the Nuvia deal, so that is the harm that we see, the products are in the market now."); Appx5690 (describing the "concrete harm that Arm has suffered because laptops are now shipping, and those laptops are using unlicensed technology").  Arm emphasized this theory of harm in closing, explaining it could not "let [defendants] use our technology unlicensed" because "we're in the IP licensing business, contracts are what we have, that is our lifeblood, we don't have a business without them."  Appx6444-6445.

44

The district court erred by discounting this evidence as insufficiently probative. *Mancini v. Northampton Cnty.*, 836 F.3d 308, 314 (3d Cir. 2016) (court deciding JMOL "may not weigh the evidence"). First, the court observed that Arm had presented no evidence from "third-party market participants" suggesting Arm's licensing ecosystem was harmed by breach of the Nuvia ALA. Appx0018. That some hypothetically stronger piece of evidence might exist, however, has no bearing on the sufficiency of the evidence presented. *See, e.g.*, *Reeves*, 530 U.S. at 152-53 (court improperly discredited nonmovant's evidence when it focused on absence of more conclusive evidence). The court also reasoned that competing evidence "undermine[d] that Arm suffered any adverse consequences at all, such as when Arm's CEO testified that Arm recorded historic licensing and royalty revenues after terminating the Nuvia ALA." Appx0018. But "[i]f there is conflicting evidence that could reasonably lead to inconsistent inferences, a verdict may not be directed." *Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir. 1984). Regardless, Arm's increased revenues after 2022 are entirely consistent with the possibilities that Arm would have made more but for the breach or that the financial consequences of the breach might take several years to materialize.

Second, the court concluded that "ARM's theory of harm is further derailed by the jury's finding that Qualcomm's products were, in fact, licensed, given that a predicate to the purported harm is unlicensed use." Appx0019. As explained above,

45

Qualcomm's products are not licensed by its ALA. *Supra* Part I. But even if they were, that would not eliminate the harm to Arm's ecosystem caused by the presence of products in the marketplace in violation of the *Nuvia* ALA. The Nuvia and Qualcomm ALAs are "[d]istinct contracts" that "impose distinct legal obligations" and whose breach "give[s] rise to distinct claims for relief." *Fed. Deposit Ins. Corp. v. Network Cap. Funding Corp.*, No. 8:14-cv-00967-AB-AN, 2015 WL 13916255, at *6 n.4 (C.D. Cal. Aug. 28, 2015); *see Somogyi v. Butler*, 518 F. Supp. 970, 988 (D.N.J. 1981) ("The rights and liabilities" of the parties under two different agreements "are separate and independent from one another."). Nothing about the Qualcomm ALA changes the conclusion that breach of the Nuvia ALA signals to Arm's partners that Arm's licenses may be breached without consequence—thus damaging Arm's ecosystem. Consistent with that, Arm's CEO testified that the "harm" arising from the presence of Qualcomm's Nuvia-based products "is that *it doesn't reflect the Nuvia deal*." Appx5684 (emphasis added). Lastly, Arm did not "concede[]" in its post-trial briefing that an adverse ruling on the Qualcomm-ALA counterclaim would be dispositive here, Appx0019; to the contrary, Arm explained that "even if Qualcomm were licensed, Nuvia has independent obligations under the termination provisions" of the Nuvia ALA. Appx6730.

### 3. *Arm presented sufficient evidence of harm based on the breach of the Nuvia ALA alone*

Regardless, under California law, the breach alone establishes harm. Arm sought specific performance, so it was not required to prove appreciable—i.e., quantifiable—actual damages. *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575-76 (1983). To the contrary, a plaintiff seeking specific performance must show the "[i]nadequacy of the remedy at law"—that is, that there *are no* adequate quantifiable damages. *Darbun Enters., Inc. v. San Fernando Cmty. Hosp.*, 239 Cal. App. 4th 399, 409 n.5 (2015). Specific performance is also appropriate even "when no actual injury has as yet been sustained, but is only apprehended from the peculiar relations of the parties." *Williams v. Coleman*, 70 Cal. App. 400, 405 (1924).

A contract-breach plaintiff seeking specific performance, like Arm, thus need not prove some form of injury beyond the harm inherent in the breach itself to establish a claim. That makes sense: it is well-established in California that "failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages." *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965-66 (2021). Indeed, nominal damages are "presumed as a matter of law to stem merely from the breach of a contract." *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632-33 (1959); *see Integrated Voting Sols., Inc. v. Automated Ballot Concepts, LLC*, No. F071837, 2017 WL 371385, at *15 (Cal. Ct. App. Jan. 26, 2017) (same); Cal. Civ.

47

Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). While nominal damages were not at issue because Arm was seeking specific performance, their availability under California law confirms that the breach alone is a cognizable form of harm entitling Arm to relief.

JMOL for Nuvia was wrong for this independent reason as well. In rejecting Arm's reliance on these authorities, the district court misinterpreted Arm's briefing as contending that Arm need not establish *harm*. Appx0016-0018. That turns Arm's argument on its head: Arm explained it had "presented sufficient evidence of harm," and that it merely did not need to show *damages* given its request for specific performance. Appx6725-6730. Nor did Arm's invocation of principles underlying nominal damages concede absence of harm, as the district court appeared to reason (Appx0016-0018): rather, the availability of nominal damages shows that under California law, breach itself can constitute harm. Cal. Civ. Code § 3360.

### B.    A Reasonable Jury Could Have Found Nuvia Breached The Nuvia ALA

The jury had more than sufficient evidence to conclude that the Nuvia ALA was breached.[4] While the district court did not reach whether Nuvia was entitled to judgment on breach (Appx0020), the record makes clear it was not. There is at least

---

[4] The Nuvia ALA is governed by California law. Appx6851.

48

a jury question whether Nuvia used derivatives of "Arm Technology" (as that term is used in the Nuvia ALA) post-termination in violation of the Nuvia ALA. This Court can and should reject Nuvia's contrary JMOL arguments and order a new trial; at the least, it should remand for the district court to decide whether there is a jury question on breach.

### 1. Arm properly terminated the Nuvia ALA, thus triggering its post-termination obligations

Nuvia does not (and cannot) dispute that Arm properly terminated the Nuvia ALA. Uncontroverted evidence establishes: that Nuvia could not be acquired without Arm's consent, Appx6850, Arm did not consent to the acquisition, but Qualcomm and Nuvia proceeded with the acquisition anyway, Appx5851; that Nuvia shared its ALA and code with Qualcomm, impermissibly disclosing "Confidential Information," Appx5842-5844; and that neither Nuvia nor Qualcomm objected at the time to Arm's terminating the Nuvia ALA based on those material breaches, Appx5852.

### 2. Nuvia breached its ALA by failing to stop using its pre-acquisition code because that code is a "derivative" of "ARM Technology"

Upon Arm's proper termination of the Nuvia ALA, section 15.1(a) required Nuvia to "immediately discontinue any use and distribution of all ARM Technology, ARM Confidential Information and any products embodying such technology or

information." Appx6849.  ARM Confidential Information included "derivatives" of "ARM Technology."  Appx6836.

Under the ALA, the pre-acquisition Nuvia code was a "derivative" of "ARM Technology," and thus subject to the ALA's post-termination obligations. Appx6849.  Section 1.8 expressly identified an "Architecture Compliant Core[]" as a non-limiting example of a "derivative" of "ARM Technology."  Appx6836; *see* Appx5834, 5914, 5936, 6197-6199, 6204.  Unrebutted trial testimony showed the Nuvia code developed under the Nuvia ALA was for the Phoenix core, which was an in-progress Architecture Compliant Core.  Appx5836, 5762-5763.  If a completed Architecture Compliant Core is a "derivative" of "ARM Technology," as the ALA specifies, it would make no sense for a partially completed Architecture Compliant Core that uses the same Arm Technology not to be.  This common-sense proposition is bolstered by the language of section 1.8, which includes a broad catch-all ("other form") and only one narrow exclusion ("silicon").  Appx6836 (defining a "derivative" of "ARM Technology" as "*including any* translation, modification, compilation, abridgement *or other form* in which ARM Technology has been recast, transformed or adapted, *including Architecture Compliant Cores*, but excluding silicon" (emphases added)).

That conclusion is further supported by Annex 1's definition of "Arm Technology" to include the Arm ARM.  Appx6836, 6872-6873, 6870, 5860.  The

jury heard Arm's expert evidence that the Nuvia code was a "derivative" of the Arm ARM—which is "Arm Technology"—because the code implemented all the Arm ARM's instructions. *E.g.*, Appx5917, 5928-5929, 5937. Indeed, Arm's expert testified that Nuvia's Phoenix code had "references to Arm all over it." Appx5937. That is unsurprising: the whole purpose of Nuvia's ALA was for Nuvia to use Arm's instruction set architecture to build an Architecture Compliant Core. Appx5566-5567, 5836; *see* Appx7035 (Nuvia's CEO describing Arm license as "critical" to Nuvia's development plans). If the Arm ARM was not "Arm Technology," and the pre-acquisition code not a "derivative" of "ARM Technology," it is unclear why Nuvia sought to enter into its ALA.

There was also ample evidence that, after termination, Qualcomm and Nuvia failed to stop using the Phoenix code. Appx6307 ("Q: You are aware that to this day, there is Nuvia code that was created under the Nuvia ALA that is in Qualcomm products?"; "A: Yes."); *see* Appx5855, 5858. Arm's experts confirmed as much. *See, e.g.*, Appx5937-5946, 5980-5981. A reasonable jury thus could easily conclude that Nuvia breached the ALA by refusing to stop using the pre-acquisition code—a "derivative" of "ARM Technology."

## III. GRANTING ARM RELIEF ON EITHER OF THESE CLAIMS REQUIRES A NEW TRIAL ON ANY REMAINING CLAIMS

If the Court grants Arm relief from judgment on either Qualcomm's declaratory-judgment counterclaim (*supra* Part I) or Arm's Nuvia breach claim

51

(*supra* Part II), a new trial would be required on any remaining claims, given the intertwinement of those claims and their disposition.

### A. Judgment For Arm On The Qualcomm-ALA Counterclaim Requires A New Trial On Arm's Breach Claims Against Nuvia And Qualcomm

"Any error of law, if prejudicial, is a good ground for a new trial."  11 Wright & Miller, *Federal Practice and Procedure* § 2805 (3d ed. 2025).  Because the district court's errors on the Qualcomm-ALA counterclaim affected the judgment on not just that claim, but also on Arm's breach claims, relief on those claims is also required.

"An error will be deemed harmless only if it is highly probable that the error did not affect the outcome of the case."  *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 372, 396 (3d Cir. 2016).  "'High probability' requires that the court have a 'sure conviction that the error did not prejudice the defendant.'"  *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 88-89 (3d Cir. 2019) (erroneous exclusion of evidence not harmless when it "could have shaped the jury's verdict").  Under this principle, when there is any possibility that an error on one claim affected the outcome of other claims, vacatur of those other claims is required.  *See Avaya*, 838 F.3d at 396-97 (vacating judgment on counterclaims where erroneous grant of JMOL on affirmative claims likely "hampered" defense of those counterclaims).

Here, it would be impossible to find the requisite "high[] probab[ility]" that the adverse outcome for Arm on the Qualcomm-ALA counterclaim "did not affect the outcome" on Arm's two breach claims—both at trial and at JMOL. *Id.* The district court's post-judgment opinion confirms the court blended these issues together. First, the court cited Qualcomm's purported license as support for its conclusion that Arm failed to show harm on its breach claim against Nuvia. Appx0019 ("ARM's theory of harm is further derailed by the jury's finding that Qualcomm's products were, in fact, licensed."); *supra* pp.44-46 (explaining why this conclusion misread the evidence against Arm). Second, the court's conclusion that "the jury was entitled to find that Qualcomm did not assume all of the obligations" of the Nuvia ALA for purposes of Arm's breach claim against Qualcomm stemmed at least in part from its rejection of Arm's argument that Qualcomm had to assume the Nuvia ALA "in order to use Nuvia's CPU designs." Appx0014-0016.

The Qualcomm-ALA counterclaim also likely influenced jury deliberations on the other two claims. Both before and during trial, defendants characterized the Qualcomm ALA as a complete defense to both of Arm's breach claims. Appx5396, 7118-7120, 6450, 6464, 6470-6471, 5539-5540, 5554, 5558. While that characterization is wrong (*supra* pp.45-46), the possibility remains that it improperly swayed the reasoning of both the jury and the district court. At the very least,

53

defendants cannot show that it was "highly probable" that no such influence occurred.  *Avaya*, 838 F.3d at 396-97.

### B.    A New Trial On Arm's Nuvia Breach Claim Requires A Complete New Trial

For similar reasons, if the Court decides only to vacate the judgment on Arm's breach claim against Nuvia, *supra* Part II, the resulting new trial must encompass all three jury issues.[5]  A partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."  *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000) (quoting *Gasoline Prods.*, 283 U.S. at 500).  This Court has thus long enforced a "general presumption against partial new trials"; to defeat that presumption, a court must "confidently conclude" that the jury's consideration of the issue to be retried "did not affect" any other aspect of the verdict.  *Id.*

That high standard is not met when multiple jury questions turn on the same evidence and underlying facts—a key signal that the issues are "interwoven." *Gasoline Prods.*, 283 U.S. at 500; *see, e.g.*, *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986) (new trial on both wrongful transfer and damages required when "to prove that the defendants' conduct warranted punitive

---

[5] If, however, this Court grants Arm JMOL on the question of whether Qualcomm's cores are licensed under Qualcomm's ALA, no new trial would be required on that counterclaim because this Court would have decided it as a matter of law.

damages, plaintiff would have to present to the jury all the facts leading up to defendants' decision to transfer her"); *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 329 (3d Cir. 1985) (complete new trial required when party's "financial history, profitability, and solvency were relevant to" both sets of claims); *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 277 (5th Cir. 2019) (similar); *Drumgold v. Callahan*, 707 F.3d 28, 46 (1st Cir. 2013) (similar).

The same relationship among the jury issues exists here. Arm's breach claims against Nuvia and Qualcomm both require making the same factual determinations: whether Arm properly terminated the Nuvia ALA following Qualcomm's acquisition of Nuvia, whether the same subsequent course of conduct constituted a violation of that ALA's requirement to stop using derivatives of Arm Technology, and whether Arm established harm. Answering those common questions requires not only interpreting the same provisions of the Nuvia ALA, but also examining the same evidence on the negotiation of the Nuvia ALA, Nuvia's creation of its pre-acquisition code, the circumstances of the acquisition, the presence of Nuvia code in Qualcomm's cores, the parties' contemporaneous communications, and the impact on Arm's royalties and licensing ecosystem. *Supra* Part II.

Under those circumstances, it is impossible to conclude with the requisite certainty that Arm's breach claim against Nuvia is distinct and separable from Arm's

breach claim against Qualcomm. To the contrary, separating these claims would require one jury to impermissibly re-examine the same factual issues another jury considered, and would pose a real risk of inconsistent verdicts. *Gasoline Prods.*, 283 U.S. at 499-501. This Court and others have thus regularly required complete new trials in analogous cases where multiple defendants' liability was potentially interrelated. *E.g.*, *Williams v. Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995); *Williams v. Slade*, 431 F.2d 605, 608-09 (5th Cir. 1970).

Similarly, Arm's breach claim against Nuvia implicates much of the same underlying evidence and factual questions as Qualcomm's declaratory-judgment counterclaim, including the rights granted and obligations imposed by the Nuvia ALA (namely, whether Qualcomm can transfer code created under that ALA to its ALA); the presence of pre-acquisition Nuvia code in Qualcomm's cores; and the parties' communications on whether Qualcomm's conduct was permitted by either ALA. *Supra* Parts I, II. It would thus be impossible to conduct a meaningful inquiry into the Qualcomm-ALA counterclaim without hearing virtually the entire scope of evidence relevant to Arm's breach claims. That degree of factual intertwinement means that the Qualcomm-ALA counterclaim cannot be tried separately from Arm's breach claims (to the extent the Court has not granted Arm JMOL on that counterclaim). *E.g.*, *Spence*, 806 F.2d at 1202. Indeed, defendants themselves

56

treated the Qualcomm ALA as a complete defense to both breach claims, *supra* p.53;

they cannot escape the consequences of that position now.

## CONCLUSION

The judgment should be reversed in part and vacated in part.

Dated:  January 15, 2026

Respectfully submitted,

/s/ Joseph R. Palmore

GREGG F. LOCASCIO
JASON M. WILCOX
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 389-5910

JOSEPH R. PALMORE
ALISON H. HUNG
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
jpalmore@mofo.com

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

ERIK J. OLSON
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

SCOTT F. LLEWELLYN
MORRISON & FOERSTER LLP
370 17th Street, 4200 Republic Plaza
Denver, CO 80202

*Counsel for Plaintiff-Appellant Arm Ltd.*

57

## CERTIFICATE OF COMPLIANCE, BAR MEMBERSHIP, AND ELECTRONIC VIRUS CHECK

The foregoing filing complies with the relevant type-volume, typeface, and type style requirements of the Federal Rules of Appellate Procedure and Local Appellate Rules because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and includes 12,857 words, excluding the parts exempted by the Rules.

Pursuant to Local Appellate Rules 28.3(d) and 46.1(e), I hereby certify that I am an active member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

Pursuant to Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text of the paper copies, that the virus detection program Windows Defender was run on the electronic file containing this filing, and that no virus was detected.

Dated: January 15, 2026

/s/ Joseph R. Palmore
Joseph R. Palmore

**No. 25-2923**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ARM LTD., *Plaintiff-Appellant*,

v.

QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC.,
NUVIA, INC., *Defendants-Appellees*.

Appeal from the U.S. District Court for the District of Delaware,
No. 1:22-cv-01146, Hon. Maryellen Noreika

## APPENDIX VOLUME 1
**(Appx0001-0027)**

GREGG F. LOCASCIO
JASON M. WILCOX
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 389-5910

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

JOSEPH R. PALMORE
ALISON H. HUNG
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
jpalmore@mofo.com

ERIK J. OLSON
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

SCOTT F. LLEWELLYN
MORRISON & FOERSTER LLP
370 17th Street, 4200 Republic Plaza
Denver, CO 80202

*Counsel for Plaintiff-Appellant Arm Ltd.*

JANUARY 15, 2026

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | | **VOLUME 1** | |
| 12/20/2024 | 572 | Jury Verdict | Appx0001 |
| 09/30/2025 | 631 | Memorandum Opinion | Appx0004 |
| 09/30/2025 | 632 | Order | Appx0022 |
| 09/30/2025 | 634 | Final Judgment | Appx0023 |
| 10/01/2025 | 635 | Arm's Notice of Appeal | Appx0024 |
| | | **VOLUME 2** | |
| | 1 | Arm's Complaint | Appx0028 |
| 08/31/2022 | 15 (public) 12 (sealed) | Defendants' Answer and Defenses to Arm's Complaint and Defendants' Counterclaim | Appx0076 |
| 09/30/2022 | 19 (public) 18 (sealed) | Defendants' Answer and Defenses to Arm's Complaint and Defendants' Amended Counterclaim | Appx0153 |
| 10/26/2022 | 21 (public) 23 (sealed) | Arm's Answer and Affirmative Defenses to Defendants' Amended Counterclaim | Appx0236 |
| 03/13/2024 | 306 (public) 300 (sealed) | Defendants' Answer and Defenses to Arm's Complaint and Defendants' Second Amended Counterclaims | Appx0281 |
| 07/10/2024 | 397 (public) 372 (sealed) | Arm's Opening Brief in Support of Motion for Partial Summary Judgment | Appx0370 |
| 07/10/2024 | 399 (public) 373 (sealed) | Arm's Statement of Facts in Support of Motion for Partial Summary Judgment | Appx0400 |

i

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|

**VOLUME 3**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 07/10/2024 | 400 (public) 374 (sealed) | DeStefano Declaration in Support of Arm's Motion for Partial Summary Judgment | Appx0410 |
| 07/10/2024 | 408 (public) 386 (sealed) | Nyarady Declaration to Opening Brief in Support of Defendants' Motion to Exclude Arm's Expert Opinions (Volume 3, Exhibits 24-30) | Appx0937 |

**VOLUME 4**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 07/10/2024 | 409 (public) 390 (sealed) | Defendants' Statement of Facts in Support of Motion for Summary Judgment | Appx1204 |
| 07/10/2024 | 410 (public) 391 (sealed) | Defendants' Opening Brief in Support of Motion for Summary Judgment | Appx1214 |
| 07/10/2024 | 411 (public) 392 (sealed) | Nyarady Declaration in Support of Defendants' Motion for Summary Judgment (Volume 1, Exhibits 1-16) | Appx1249 |

**VOLUME 5**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 07/10/2024 | 412 (public) 393 (sealed) | Nyarady Declaration in Support of Defendants' Motion for Summary Judgment (Volume 2, Exhibits 17-28) | Appx2002 |

**VOLUME 6**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 07/10/2024 | 413 (public) 394 (sealed) | Nyarady Declaration in Support of Defendants' Motion for Summary Judgment (Volume 3, Exhibits 29-43) | Appx2667 |

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| | | **VOLUME 7** | |
| 08/07/2024 | 434 (public) 416 (sealed) | Arm's Answering Brief in Opposition to Defendants' Motion for Summary Judgment | Appx3459 |
| 08/07/2024 | 435 (public) 417 (sealed) | Arm's Statement of Facts in Support of Opposition to Defendants' Motion for Summary Judgment | Appx3494 |
| 08/07/2024 | 436 (public) 418 (sealed) | Arm's Response to Defendants' Statement of Facts in Support of Motion for Summary Judgment | Appx3503 |
| 08/07/2024 | 440 (public) 422 (sealed) | Defendants' Response to Arm's Statement of Facts in Support of Motion for Partial Summary Judgment | Appx3514 |
| 08/07/2024 | 441 (public) 423 (sealed) | Defendants' Answering Brief in Opposition to Arm's Motion for Partial Summary Judgment | Appx3523 |
| 08/07/2024 | 442 (public) 424 (sealed) | Defendants Statement of Facts in Support of Opposition to Arm's Motion for Partial Summary Judgment | Appx3562 |
| 08/07/2024 | 443 (public) 425 (sealed) | Nyarady Declaration in Support of Defendants' Opposition to Arm's Motion for Partial Summary Judgment (with Exhibits 1-80) | Appx3570 |
| | | **VOLUME 8** | |
| 08/07/2024 | 445 (public) 427 (sealed) | Nyarady Declaration to Defendants' Answering Brief in Support of Opposition to Arm's Motion to Exclude Defendants' Experts (with Exhibits 1-28) | Appx4250 |

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 08/21/2024 | 463 (public)<br>453 (sealed) | Nyarady Declaration to Defendants' Reply Brief in Support of Motion to Exclude Arm's Experts (with Exhibit 1) | Appx4548 |
| 08/21/2024 | 467 (public)<br>454 (sealed) | Arm's Reply Brief in Support of Motion for Partial Summary Judgment | Appx4556 |
| 08/21/2024 | 468 (public)<br>455 (sealed) | Arm's Response to Defendants' Statement of Facts in Support of Opposition to Arm's Motion for Partial Summary Judgment | Appx4579 |
| 08/21/2024 | 469 (public)<br>456 (sealed) | DeStefano Declaration in Support of Arm's Response to Defendants Statement of Facts in Support of Opposition to Arm's Motion for Partial Summary Judgment | Appx4587 |
| 08/21/2024 | 464 (public)<br>459 (sealed) | Defendants' Response to Arm's Statement of Facts in Opposition to Defendants' Motion for Summary Judgment | Appx4645 |
| 08/21/2024 | 465 (public)<br>460 (sealed) | Defendants' Reply Brief in Support of Motion for Summary Judgment | Appx4653 |
| 08/21/2024 | 466 (public)<br>461 (sealed) | Nyarady Declaration in Support of Defendants' Reply Brief in Support of Motion for Summary Judgment (with Exhibits 1-14) | Appx4679 |

**VOLUME 9**

| 10/30/2024 | 513 | Transcript of Motions Hearing | Appx5002 |
| 11/13/2024 | 534 (public)<br>518 (sealed) | Proposed Joint Pretrial Order (with Exhibits 1-14) | Appx5062 |

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 11/20/2024 | 585-1 (public) 530 (sealed) | Transcript of Pretrial Conference | Appx5233 |
| 11/22/2024 | 535 (public) 528 (sealed) | Arm Letter to The Hon. Maryellen Noreika Re: Court's Order at Pretrial Conference | Appx5322 |
| 11/22/2024 | 537 (public) 529 (sealed) | Defendants Letter to The Hon. Maryellen Noreika Re: Trial of Defendants' Counterclaim and Defenses Before Jury | Appx5395 |
| 11/25/2024 | 531 | Arm's Response to Defendants' Letter | Appx5400 |
| 11/25/2024 | 538 (public) 532 (sealed) | Defendants' Response to Arm's Letter | Appx5402 |

**VOLUME 10**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 12/05/2024 | 617 | Transcript of Pre-Trial Conference | Appx5471 |
| 12/16/2024 | 588 | Transcript of Jury Trial – Day 1 | Appx5491 |
| 12/17/2024 | 589 | Transcript of Jury Trial – Day 2 | Appx5808 |

**VOLUME 11**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| 12/18/2024 | 590 | Transcript of Jury Trial – Day 3 | Appx6088 |
| 12/19/2024 | 591 | Transcript of Jury Trial – Day 4 | Appx6377 |
| 12/20/2024 | 592 | Transcript of Jury Trial – Day 5 | Appx6545 |
| 12/18/2024 | 567 | Joint Proposed Final Jury Instructions | Appx6577 |
| 12/19/2024 | 568 | Final Jury Instructions | Appx6612 |
| 12/19/2024 | 569 | Final Verdict Form | Appx6624 |
| 01/07/2025 | 581 | Joint Admitted Exhibit & Witness List (Jury Trial) | Appx6627 |

v

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | | **VOLUME 12** | |
| 01/17/2025 | 601 (public) 596 (sealed) | Arm's Opening Brief in Support of Motion for Judgment as a Matter of Law or New Trial | Appx6634 |
| 01/17/2025 | 598 | Nuvia's Opening Brief in Support of Renewed Motion for Judgment as a Matter of Law | Appx6662 |
| 02/14/2025 | 608 | Defendants' Answering Brief in Opposition to Arm's Motion for Judgment as a Matter of Law or New Trial | Appx6688 |
| 02/14/2025 | 612 (public) 609 (sealed) | Arm's Answering Brief in Opposition to Nuvia's Renewed Motion for Judgment as a Matter of Law | Appx6716 |
| 02/28/2025 | 616 (public) 614 (sealed) | Arm's Reply Brief in Support of Motion for Judgment as a Matter of Law or New Trial | Appx6745 |
| 02/28/2025 | 615 | Nuvia Reply Brief in Support of Renewed Motions for Judgment as a Matter of Law | Appx6765 |
| 08/29/2025 | 628 | Transcript of Post-Trial Motions Hearing (08/29/2025) | Appx6780 |
| | | **VOLUME 13** | |
| | JTX1 | Nuvia ALA (signed) (dated 09/27/2019) | Appx6836 |
| | JTX2 | Nuvia ALA Annex 1 (signed) (dated 09/27/2019) | Appx6853 |
| | JTX5 | Nuvia ALA Annex 1 (signed) (dated 03/27/2020) | Appx6869 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|----------|--------------|--------------|----------|
| | JTX8 | Letter from C. Herzog to G. Williams (dated 02/01/2022) | Appx6883 |
| | JTX9 | Letter from A. Chaplin to S. Collins (dated 04/01/2022) | Appx6884 |
| | JTX10 | Qualcomm ALA | Appx6886 |
| | JTX11 | Qualcomm ALA Annex 1 ArmV8-A Architecture | Appx6929 |
| | JTX12 | Qualcomm ALA Annex 1 ArmV8 Next Architecture | Appx6952 |
| | JTX13 | Qualcomm ALA Annex 1 ArmV9-A Architecture | Appx6956 |
| | JTX14 | Qualcomm TLA | Appx6979 |
| | PTX103 | Email from G. Williams to S. Segars Re: talk (dated 03/26/2019) | Appx7034 |
| | PTX105 | Email from G. Williams to L. Tan Re: Slides from the meeting (dated 04/12/2019) | Appx7036 |
| | PTX118 | Letter from J. Kirkpatrick to Arm Re: Assignment of Contracts (dated 06/19/2015) | Appx7042 |
| | PTX121 | Email from G. Williams to L. Tan Re: ARM latest (dated 06/19/2019) | Appx7044 |
| | PTX122 | Email from G. Willaims to T. Herbert Re: License payment model (dated 06/21/2019) | Appx7045 |
| | PTX124 | Email from G. Williams to S. Darling Re: Deck (dated 07/03/2019) | Appx7047 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | PTX165 | Arm 2020 Architecture Extensions (dated 01/30/2020) | Appx7072 |
| | PTX212 | Press Release - Qualcomm to Acquire Nuvia (dated 01/12/2021) | Appx7108 |
| | PTX234 | Email from Z. Asghar to P. Williamson Fw: Nuvia (dated 01/29/2021) | Appx7115 |
| | PTX240 | Letter from P. Williamson to Z. Asghar (dated 02/02/2021) | Appx7117 |
| | PTX242 | Email from Z. Asghar to P. Williamson Re: [EXT] Response to letter (dated 02/04/2021) | Appx7118 |
| | PTX247 | Letter from P. Williamson to Z. Asghar (dated 02/16/2021) | Appx7121 |
| | PTX253 | Letter from Z. Asghar to P. Williamson (dated 02/25/2021) | Appx7122 |
| | PTX260 | Email from P. Williamson to Z. Asghar Re: [EXT] Response to your most recent letter (dated 03/02/2021) | Appx7124 |
| | PTX268 | Letter from Z. Asghar to P. Williamson (dated 03/14/2021) | Appx7126 |
| | PTX277 | Email from Z. Asghar to W. Abbey and P. Williamson Re: Arm Discussion (dated 03/25/2021) | Appx7127 |
| | PTX285 | Email from Z. Asghar to P. Williamson Re: Approval to support additional requests from the NUVIA Engineering team (dated 03/31/2021) | Appx7128 |

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| | PTX296 | Email from C. Amon to K. Kjelland et al. Fw: [EXT] Re: Contact Names (dated 05/05/2021) | Appx7129 |
| | PTX299 | Phoenix CPU ISA Reference Manual | Appx7132 |
| | PTX329 | Arm Architecture Reference Manual - Armv8, for A-profile architecture | Appx7497 |
| | PTX350 | Email from G. Williams to J. Thompson Re: Board of directors meeting (dated 05/08/2022) | Appx7499 |

**VOLUME 14**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| | PTX351 | Hamoa CPU Subsystem Software Specification (dated 12/2021) | Appx7513 |
| | PTX353 | Qualcomm presentation, Pakala NUVIA CPUs | Appx7653 |
| | PTX376 | Letter from S. Collins to G. Williams (dated 03/13/2022) | Appx7660 |
| | PTX400 | Email from R. Grisenthwaite to R. Haas and P. Williamson Fw: Qualcomm's Hamoa CPU (v8.7) implementation results/waivers summary for compliance sign-off "green signal" (dated 05/18/2022) | Appx7661 |
| | PTX432 | Phoenix CPU ISA Reference Manual | Appx7665 |
| | PTX447 | Samsung-Arm Executive Meeting presentation (dated 10/04/2022) | Appx8092 |

**VOLUME 15**

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| | PTX478 | Phoenix CPU ISA Reference Manual | Appx8135 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | PTX650 | Email from Sender Unspecified to J. Bruno et al. (dated 06/03/2022) | Appx8371 |
| | PTX651 | Email from R. Grisenthwaite to G. Williams Re: Technical support and servers (dated 03/04/2019) | Appx8377 |
| | PTX653 | Email from productupdates@arm.com to gerard@nuviainc.com Re: [EXTERNAL] NuVia Inc. ARM Confidential release of deliverables as per contract CM0001216 now available to download from Connect (dated 02/24/2020) | Appx8500 |
| | PTX720 | Email from RK Chunduru to A. Palkhiwala Re: Internal CPU vs. ARM (Amon Ex. 03) | Appx8501 |
| | PTX722 | Email from A. Palkhiwala to C. Amon Re: 1-1 topics (Amon Ex. 05) | Appx8502 |
| | PTX731 | Email from A. Livermore to C. Amon Re: Proposed Acquisition of Nuvia (Amon Ex. 14) | Appx8503 |
| | PTX784 | Email from R. Sankuratri to R. Gupta et al. Re: Nuvia Firewall Access Guidelines (Asghar Ex. 15) | Appx8505 |
| | PTX869 | Email from M. Gulati to gerardiii@me.com Re: list of things from ARM (Gulati Ex. 02 ) | Appx8506 |
| | PTX892 | Chat thread between M. Gulati and Z. Asghar (Gulati Ex. 28) | Appx8507 |

x

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | PTX897 | Email from J. Trivedi to M. Gulati Re: Phoenix (v6.7) implementation results/waivers approval for compliance sign-off "green signal" (Gulati Ex. 33) | Appx8508 |
| | PTX904 | Chat thread between R. Sankuratri and P. Kanapathipillai (Kanapathipillai Ex. 10) | Appx8510 |
| | PTX1004 | Arm v8 Compliance Waiver for Qualcomm Phoenix CPU Core (Trivedi Ex. 08) | Appx8512 |
| | PTX1006 | Nuvia Connect downloads (Trivedi Ex. 10) | Appx8542 |
| | PTX1132 | Outcomes of a Comparison of Nuvia Phoenix CPU and Qualcomm's Phoenix Family of Products | Appx8573 |
| | PTX1197 | Email from A. Katouzian to C. Amon et al. Re: Nuvia update (dated 08/27/2020) | Appx8590 |
| | DTX10 | Email from T. Herbert to T. Lepinski Re: NuVia Response | Appx8594 |
| | DTX14 | Email from T. Herbert to T. Lepinski et al. Re: QCOM: Acquisition of Nuvia Raises Some Eyebrows | Appx8597 |
| | DTX28 | Email from W. Abbey to J. Hur Re: Arm News | Appx8602 |
| | DTX30 | Email from W. Abbey to J. Hur Re: Qualcomm Dispute – Protecting our Ecosystem | Appx8603 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | DTX31 | Email from L. Couillard to W. Abbey et al. Re: Qualcomm v9 TC Meeting Notes 7/12/19 | Appx8604 |
| | DTX32 | Email from T. Lepinski to W. Abbey and L. Couillard Re: Summary of our discussion | Appx8621 |
| | DTX34 | Email from P. Greenhalgh to L. Bryant and P. Williamson Re: Qualcomm: Ziad/Paul Video Conf April 9 | Appx8623 |
| | DTX35 | Slide Deck – Arm, Qualcomm Cortex-A Exec Meeting | Appx8627 |
| | DTX36 | Email from L. Couillard to P. Greenhalgh et al. Re: QCOM CPU performance deck review/walkthrough | Appx8694 |
| | DTX37 | Email from L. Couillard to S. Rosinger Re: Qualcomm will acquire Nuvia, server CPU maker led by ex-Apple chip architect \| VentureBeat | Appx8696 |
| | DTX39 | Email from T. Lepinski to L. Couillard Re: Q/Nuvia | Appx8698 |
| | DTX41 | Email from L. Couillard to Y. Akrout and C. Oakley Re: Exec QC meeting re Nuvia @ QC Reorg | Appx8715 |
| | DTX47 | Messages between P. Williamson and L. Bryant | Appx8719 |
| | DTX51 | Messages between P. Williamson and L. Bryant | Appx8722 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | DTX52 | Messages between P. Williamson and K. Shivashankar | Appx8723 |
| | DTX54 | Slide Deck – Karthik Shivashankar, Qualcomm & Nuvia Architecture License | Appx8725 |
| | DTX57 | Messages between R. Haas and P. Williamson | Appx8733 |
| | DTX70 | Email from P. Williamson to E. Spruce Re: Arm News | Appx8737 |
| | DTX76 | Email from R. Grisenthwaite to G. Williams and M. Gretton-Dann Re: Technical support and servers | Appx8742 |
| | DTX77 | Email from D. O'Driscoll to R. Grisenthwaite et al. Re: Telecaster arch license? | Appx8746 |
| | DTX79 | Nuvia ALA – Annex 1 | Appx8749 |
| | DTX80 | Nuvia ALA – Annex 1 | Appx8765 |
| | DTX88 | Email from R. Grisenthwaite to L. Mamou et al. Re: V9 for NuVia | Appx8779 |
| | DTX90 | Messages between R. Grisenthwaite and P. Greenhalgh | Appx8783 |
| | DTX103 | Email from L. Tan to S. Segars Re: Congratulations | Appx8789 |
| | DTX104 | Email from S. Segars to G. Williams Re: Congratulations | Appx8790 |
| | DTX108 | Letter from P. Williamson to Z. Asghar | Appx8791 |

xiii

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | DTX110 | Email from S. Segars to R. Haas et al. Re: QC/NUVIA | Appx8792 |
| | DTX142 | Slide Deck – Arm, Changing the world.  Again | Appx8793 |
| | DTX144 | Messages between R. Haas and P. Williamson | Appx8874 |
| | DTX145 | Messages between R. Haas and P. Williamson | Appx8879 |
| | DTX146 | Messages between R. Haas and P. Williamson | Appx8886 |
| | DTX147 | Messages between R. Haas and K. Gill | Appx8894 |
| | DTX152 | Email from R. Haas to M. Kyung et al. Re: Arm News | Appx8907 |
| | DTX153 | Messages between S. Shah and P. Williamson | Appx8909 |

**VOLUME 16**

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | DTX155 | Anticipated Acquisition by Nvidia Corporation of Arm Limited Initial Submission | Appx8916 |
| | DTX165 | Arm v8 Compliance Waiver for Qualcomm Phoenix CPU Core | Appx8945 |
| | DTX167 | Email from Y. Akrout to V. Agrawal and A. Chaudhry Re: Qualcomm(Nuvia Phoenix v8.7 implementation) Architecture compliance signoff document | Appx8975 |

| **Date** | **Dkt./Ex.** | **Document** | **Appx** |
|---|---|---|---|
| | DTX168 | Email from V. Agrawal to R. Grisenthwaite et al. Re: Nuvia core sign-off | Appx8977 |
| | DTX273 | Email from C. Amon to A. Chaplin et al. Re: Privileged & Confidential – Notes from Samsung Meeting | Appx8982 |
| | DTX286 | Email from R. Haas to S. Segars and C. Amon Re: Contact Names | Appx8984 |
| | DTX294 | Email from A. Lawson to C. Amon Re: TM Roh meeting | Appx8988 |
| | DTX358 | Email to M. Gulati, G. Williams et al. Re: Phoenix (v8.7) implementation results/waivers approval for compliance sign-off "green signal" | Appx8990 |
| | DTX401 | Qualcomm Source Code | Appx8992 |
| | DTX401A | Pages of Qualcomm Source Code | Appx9037 |
| | DTX486 | Arm, Learn the architecture – Introducing the Arm architecture Version 2.1 | Appx9039 |
| | DTX791 | Shareholder Letter - Arm FYE24 - Q3 | Appx9063 |
| | DTX954 | Letter from A. Chaplin to S. Collins | Appx9085 |
| | DTX966 | Agreement and Plan of Merger by and among Qualcomm Technologies, Inc., Nile Acquisition Corporation, Nuvia, Inc., and Shareholder Representative Services LLC, as SecurityHolders' Agent | Appx9087 |
| | DTX1071 | Email from R. Haas to S. Segars et al. Re: Q Meeting | Appx9223 |

xv

| Date | Dkt./Ex. | Document | Appx |
|------|----------|----------|------|
| | DTX1095 | Email from G. Williams to C. Tran, T. Herbert Re: ALA discussion with attachments | Appx9224 |
| | DTX1113 | Email from T. Herbert to G. Williams et al. Re: TLA and ALA with attachments | Appx9263 |
| | DTX1196 | Letter from Z. Asghar to P. Williamson | Appx9334 |
| | DTX1219 | Email from P. Williamson to R. Haas Re: Paul Williamson shared "Qualcomm & Nuvia Architecture License_v1" with you | Appx9335 |
| | DTX1239 | Messages between S. Segars and R. Haas | Appx9336 |
| | DTX1495 | Transcript from Arm's July 31, 2024 investor call, titled "Arm First Quarter Fiscal Year 2025." | Appx9338 |
| | DTX1560 | Press Release – Qualcomm, "Qualcomm to Acquire NUVIA," Qualcomm (2021) | Appx9352 |
| | DTX1587 | Excerpts of Arm Architecture Reference Manual Armv8, for Armv8-A architecture profile | Appx9356 |
| | DTX1616 | Arm Royalty Credit Memo | Appx9364 |
| | DTX1806 | Amendment No. 1 to Annex 1 for the ARMv8-A Architecture Agreement | Appx9367 |
| | DTX1810 | R. Haas and W. Abbey Emails and Letters to Arm Customers | Appx9368 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARM LTD.,                                    )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )    C.A. No. 22-1146 (MN)
                                             )
QUALCOMM INC., QUALCOMM                      )
TECHNOLOGIES, INC. and NUVIA, INC.,          )
                                             )
                Defendants.                  )

## VERDICT FORM

In answering the following questions and filling out this Verdict Form, you are to

follow all of the instructions I have given you in the Court's charge. Your answer to each

question must be unanimous.

Appx0001

We, the jury in this case, find the following answers to the following questions:

### Arm's Claims for Breach of Contract

**Question 1:**  Did Arm prove by a preponderance of the evidence that Nuvia breached Section 15.1(a) of the Nuvia ALA?

YES **For Arm**       NO **For Nuvia**

YES _____      NO _____

**Question 2:**  Did Arm prove by a preponderance of the evidence that Qualcomm breached Section 15.1(a) of the Nuvia ALA?

YES **For Arm**       NO **For Qualcomm**

YES _____      NO ___✓___

### Qualcomm's Claim

**Question 3:**  Did Qualcomm prove by a preponderance of the evidence that the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA?

YES **For Qualcomm**       NO **For Arm**

YES ___✓___      NO _____

1

Appx0002

## CONCLUSION

You have reached the end of the verdict form. Review the completed form to ensure that it accurately reflects your unanimous determinations. All jurors should then sign and date the Verdict Form in the space below and notify the Court Security Officer that you have reached a verdict.

Date: 12/20/24



2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 22-1146 (MN) |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Anne Shea Gaza, Robert M. Vranna, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Gregg F. LoCascio, P.C., Jason M. Wilcox, P.C., Meredith Pohl, Matthew J. McIntee, KIRKLAND & ELLIS LLP, Washington, DC; Jay Emerick, Adam M. Janes, KIRKLAND & ELLIS LLP, Chicago, IL; Peter Evangelatos, KIRKLAND & ELLIS LLP, Daralyn J. Durie, Joyce Liou, Shaelyn K. Dawson, MORRISON & FOERSTER LLP, San Francisco, CA; Erik J. Olson, MORRISON & FOERSTER LLP, Palo Alto, CA; Scott F. Llewellyn, MORRISON & FOERSTER LLP, Denver, CO; Kyle W.K. Monney, Kyle D. Friedland, MORRISON & FOERSTER LLP, New York, NY – Attorneys for Plaintiff

Jack B. Blumenfeld, Jennifer Ying, Travis Murray, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Karen L. Dunn, William A. Isaacson, Erin J. Morgan, Melissa F. Zappala, FUNN ISAACSON RHEE LLP, Washington, DC; William T. Marks, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, DC; Catherine Nyarady, Anna R. Gressel, Jabos A. Braly, Alexander M. Butwin, Paul, WEISS, RIFKIND, WHARTON & GARRISON, LLP, New York, NY; Andrea L. D'Ambra, Susana Medeiros, NORTON ROSE FULBRIGHT US LLP, New York, NY; Kira Latham, NORTON ROSE FULBRIGHT US LLP, Dallas, TX – Attorneys for Defendants

September 30, 2025
Wilmington, Delaware

Appx0004

**NOREIKA, U.S. DISTRICT JUDGE:**

From December 16 to 20, 2024, the Court presided over jury trial in this contract dispute between Plaintiff ARM Ltd. ("ARM" or "Plaintiff") and Defendants Nuvia Inc. ("Nuvia"), Qualcomm Inc., and Qualcomm Technologies, Inc. ("Qualcomm") (together, "Defendants"). (*See* D.I. 588, 589, 590, 591, 592 (together, "Tr.")).[1]  Pending before the Court are two post-trial motions from the parties:  (1) ARM's motion for judgment as a matter of law or a new trial; and (2) Nuvia's motion for judgment as a matter of law.  (D.I. 595, 597).  For the reasons set forth below, the Court will DENY Arm's motion and GRANT-IN-PART and DENY-IN-PART Nuvia's motion.

## I.     BACKGROUND

### A.     The Parties

This case concerns a contract dispute between two technology firms.  ARM is a British microprocessor company with a principal place of business in Cambridge, United Kingdom. (D.I. 1 ¶ 4).  Arm developed an instruction set architecture ("ISA") to build microprocessors. (Tr. at 260:7-261:24, 267:19-268:8, 442:16-443:3, 512:6-14).  An ISA is a list of instructions that enables compatibility between electronic devices (i.e., hardware) and the programs that run on them (i.e., software).  This permits smartphones, computers, and tablets, for example, to use the same software applications.  (*Id*. at 260:7-261:24, 478:10-22, 681:9-22, 684:20-685:8, 691:7-13). ARM codifies its ISAs in its "architecture reference manual" ("the Reference Manual"), which engineers use to design central processing units ("CPUs").  (*Id*. at 479:16-25).  As part of its business model, ARM licenses its ISAs.  (*Id.* at 264:7-20).

---

[1]     The Court also held a limited bench trial after the jury left for the day on December 17, 2024.  (*See* D.I. 593).

Appx0005

Qualcomm is a Delaware-incorporated semiconductor company with headquarters in San Diego, California. (D.I. 1 ¶¶ 5-6). Qualcomm builds microchips for consumer goods such as smartphones, laptops, and car dashboards. (Tr. at 745:9-746:2).

Nuvia was led by a team of former Apple engineers seeking to build ARM-compliant server CPUs and began working with ARM in February of 2019. (Tr. at 161:19-162:5, 421:2-11, 381:12-382:4, 388:20-22; PTX-103 at 2). Nuvia was later acquired by Qualcomm in March of 2021 through a reverse triangular merger. (Tr. at 454:9-11, 575:17-23, 808:10-12).[2]

### B.     The Dispute

On May 30, 2013, Qualcomm and ARM signed an Architecture License Agreement (the "Qualcomm ALA"). (JTX-10, 11). Among other things, the Qualcomm ALA granted Qualcomm a "non-exclusive, world-wide right and licence" to "use the applicable ARM Technology to design and have designed . . . Architecture Compliant Cores," which are "microprocessor core[s] developed by or for [Qualcomm] under the [ALA]." (JTX-11 § A.6, B.1.1).

On September 27, 2019, Nuvia and ARM executed an Architecture License Agreement ("the Nuvia ALA"). (JTX-1, 2). Similar to the Qualcomm ALA, the Nuvia ALA granted Nuvia a license to use ARM's technology to design CPUs. (Id.). The Nuvia ALA stipulated that the license was not transferable in the event of an acquisition without ARM's consent. (Id. § 16.3). It also stated that, in the event of a material breach, each party had an obligation to return or destroy certain technology received from the other. (Id. §§ 14.2, 15.1(a)).

In January 2021, Qualcomm announced that it had reached a deal to acquire Nuvia. (PTX-212 at 1-2; PTX-234 at 2; Tr. 172:8-173:7, 216:14-23). The acquisition occurred in March of that

---

[2]     Qualcomm formed a subsidiary corporation, and that corporation and Nuvia were merged together with Nuvia being the surviving entity. (Tr. at 575:17-23).

year.  (Tr. 808:10-14).  On February 1, 2022, Arm notified Nuvia that it would terminate the Nuvia

ALA, effective March 1, 2022.  (JTX-8).

### C.      Procedural History

ARM filed this action on August 31, 2022, alleging that Nuvia and Qualcomm breached

the Nuvia ALA when Qualcomm acquired Nuvia in March of 2021.  (D.I. 1).  Defendants counter

that neither breached the Nuvia ALA, and that Qualcomm's use of ARM's code following the

acquisition was licensed under the Qualcomm ALA.  (D.I. 300 at 56).  Both ALAs stipulate that

"[t]he validity, construction and performance of this ALA shall be governed by California Law."

(JTX-1 § 16.12; JTX-10 § 16.15).

From December 16 to 20, 2024, the Court presided over a jury trial.  (*See* Tr.).  At the

conclusion of trial, the jury found that (1) ARM had not proven that Qualcomm breached Section

15.1(a) of the Nuvia ALA, and (2) that Qualcomm had proven that its use of ARM's code was

licensed under the Qualcomm ALA.  (D.I. 572).  The jury hung, however, on the question of

whether Nuvia breached the Nuvia ALA.  (*Id.*).

On January 17, 2025, the parties filed their motions for judgment as a matter of law.

(D.I. 595, 597).  Those motions were fully submitted as of February 28, 2025.  (D.I. 596, 598, 608,

609, 614, 615).  The Court now addresses the motions.

## II.      LEGAL STANDARDS

### A.      Judgment as a Matter of Law

Judgment as a matter of law may be entered against a non-moving party if the Court "finds

that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on

[an] issue."  Fed. R. Civ. P. 50(a)(1).  A motion for judgment as a matter of law "should be granted

only if, viewing the evidence in the light most favorable to the nonmovant and giving it the

advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F. 3d 354, 373 (3d Cir. 2016) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F. 3d 1153, 1166 (3d Cir. 1993)). "Judgment as a matter of law is proper only if the record is critically deficient of the minimum quantum of evidence needed to support the verdict." *Washington v. Gilmore*, 124 F. 4th 178, 185 (3d Cir. 2024) (internal quotation marks omitted). It is a remedy to be invoked "sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F. 3d 375, 383 (3d Cir. 2004); *Marra v. Philadelphia Hous. Auth.*, 497 F. 3d 286, 300 (3d Cir. 2007).

In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence, or substitute its own conclusions for those of the jury where the record evidence supports multiple inferences. *See Rodriquez v. Southeastern Pa. Trans. Auth.*, 119 F. 4th 296, 298 (3d Cir. 2024); *Avaya*, 838 F. 3d at 373. Moreover, in the Third Circuit, when the movant bears the burden of proof on an issue, judgment as a matter of law is appropriate only if "there is insufficient evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F. 2d 1171, 1177 (3d Cir. 1976) (citations omitted).

### B.    Motion for a New Trial

"[A]fter a jury trial," the Court may grant a new trial "to any party" on "all or some of the issues" for "any reason for which a new trial has heretofore been granted" in federal court actions at law. Fed. R. Civ. P. 59(a)(1)(A). Common grounds for a new trial are: "(1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence exists that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced

4

Appx0008

the verdict; or (4) where the jury's verdict was facially inconsistent." *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

Whether to grant a new trial is a question committed to the Court's discretion. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Unlike the standard for judgment as a matter of law, on a motion for a new trial, "the Court need not view the evidence in the light most favorable to the verdict winner." *Ateliers*, 85 F. Supp. 3d at 776. "Nevertheless, new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F. 2d 1344, 1353 (3d Cir. 1991).

## III.   DISCUSSION

### A.   Whether Qualcomm Proved that Defendants Were Licensed Under the Qualcomm ALA (Verdict Question 3)

The jury found that Qualcomm proved by a preponderance of the evidence that the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA. (D.I. 572). ARM challenges that finding as unsupported for three reasons, arguing: (1) that the CPU designs at issue were not developed under the Qualcomm ALA; (2) that the CPUs were developed for Nuvia, not Qualcomm; and (3) that the Qualcomm ALA's license is limited to "ARM Technology." (D.I. 596 at 4-7).

#### 1.   Whether the CPUs at Issue Were Designed Under the Qualcomm ALA

The Qualcomm ALA applies to "applicable ARM Technology," including any "Architecture Compliant Core," which is "a microprocessor core developed by or for [Qualcomm] under the licenses granted in this [Agreement]." (JTX-11 §§ A.6, B.1.1). ARM asserts that the technology at issue in this case was developed by Nuvia prior to the acquisition. Qualcomm

5

Appx0009

counters that there was sufficient trial evidence for the jury to conclude that the Hamoa, Pakala, Nordschleife, and Pegasus CPUs at issue were developed by Qualcomm after the 2021 acquisition.

At trial, Qualcomm presented evidence that relevant cores "[a]ll were conceived at Qualcomm" and worked on by Qualcomm employees. (Tr. at 430:15; *id.* at 400:13-15; *id.* at 579:15-22). Specifically, Nuvia's CEO testified that "the design start point" for Hamoa was July 21, 2021, the Pakala product "had a start date of January 2022," Pegasus "stated roughly around the summer of 2022," and Nordschleife, "[t]he automotive platform, its design start was in February of 2023." (*Id.* at 428:20-430:12). All of those dates succeed the March 2021 acquisition. Qualcomm's witnesses further attested to the fact that "Nuvia didn't have any finished products at the time" of the acquisition, and its original project, a "server CPU" that they were "working on at Nuvia," was "canceled" after the company became Qualcomm. (*Id.* at 428:1-12, 579:17-18). Based on that evidence, the jury could have reasonably concluded that the CPUs at issue were built by Qualcomm employees (at least some of whom were former Nuvia employees) after the acquisition, and that the relevant cores fell under the license in the Qualcomm ALA.

ARM presented contrary evidence. It elicited an acknowledgment, for example, that "[t]he work that Nuvia was doing when Nuvia was a separate entity, before the acquisition, was not being done by or for Qualcomm under the license granted to Qualcomm." (*Id.* at 583:4-586:15; *see also* 380:15-19, 390:7-395:24, 784:3-10; PTX-103 at 1-2; PTX-260 at 2). But when there is conflicting testimony at trial and the evidence permits more than one reasonable finding on any given point, the jury is entitled to make credibility determinations, weigh the evidence, and believe the witnesses it considers most trustworthy. *See Marra*, 497 F. 3d at 306; *Woodson v. Scott Paper Co.*, 109 F. 3d 913, 921 (3d Cir. 1997) ("[T]he jury had the unique opportunity to judge the credibility and demeanor of the witnesses who testified at the trial, and [therefore] it reached its

6

Appx0010

conclusions based in part on those observations.") (internal quotation marks omitted). It was the jury's job to do that here, and it came out in Qualcomm's favor. There is no basis to upset that ruling.

### 2. Whether the CPUs at Issue Were Designed for Nuvia or Qualcomm

ARM next argues that the cores at issue were not "developed by or for" Qualcomm, as required by the Qualcomm ALA. (JTX-11 § A.6). ARM asserts that the license provided in the Annex is "subject to Clause 2.2 of the ALA," which "does not grant to the Designer any license in respect of the Arm Technology for any purpose other than for designing on behalf of [Qualcomm]." (JTX-11 § B.1.1; JTX-10 § 2.2). Qualcomm responds that the jury was entitled to read both "the plain language of the Qualcomm ALA as well as extrinsic evidence" to decide whether "all of Qualcomm's design and development work" on the at-issue CPUs was protected under the Qualcomm ALA. (D.I. 608 at 6).

Throughout trial, the parties agreed that the provisions of the ALAs at issue were susceptible to multiple reasonable readings. Indeed, ARM prevailed on summary judgment on that very premise. (D.I. 513 at 27:4-6 ("Qualcomm's [motion for summary] judgment that its cores are properly licensed under the Qualcomm ALA [is] denied. [The Court finds] [i]ssues of fact on that clearly."); D.I. 416 at 15 ("[There is] a genuine issue of fact regarding whether Qualcomm's ALA might license Qualcomm to use technology developed under other ALAs.")). That led the Court to read ***an agreed-upon instruction*** to the jury that "Arm and Defendants dispute the meaning of the words in their contract." (Tr. at 886:1-8). The Court went on to instruct that, "[i]n deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of language used in the contract as well as the circumstances surrounding the making of the contract." (*Id.*).

7

Appx0011

Thus, by agreement of the parties, the jury was charged with resolving which of the parties' competing interpretations was correct. *See Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 602 (Cal. Ct. App. 2008); *LG Infocomm U.S.A., Inc. v. Euler Am. Credit Indem. Co.*, 419 F. Supp. 2d 1248, 1258 (S.D. Cal. 2005) ("ambiguous" means "capable of two or more constructions, both of which are reasonable").

Given that, the jury was entitled to consider extrinsic evidence, including that, right after the announcement of the acquisition in January 2021, high level ARM employees thought that Qualcomm "ha[d] a reasonably bombproof arch license that covers everything [through the] mid 2020s at least," (DTX-90 at 5), and that, following the combination, the "Nuvia team will be able to use the architecture license which Qualcomm has." (DTX-52 at 1; DTX-47 at 1) ("Qualcomm Nuvia is a problem. Qualcomm already have a v8 arch license."). Indeed, ARM's CEO wrote in a contemporaneous internal message that the Nuvia ALA "had left a route to blow a hole in [ARM's] revenue plan" because "Qualcomm already ha[d] a v9 architecture license" under its own ALA. (DTX-144 at 1). That observation led him to vent that "I'm struggling not to be pissed that we set up a route for Qualcomm to collapse the payments to Arm," which "feels like in our chess game we left ourselves very exposed." (DTX-145 at 3). And Qualcomm itself told ARM that it was planning to proceed post-merger under its license in the Qualcomm ALA. (*See* DTX-1196; Tr. at 456:23-457:7, 576:9-577:23).

Once again, ARM presented evidence to the contrary. ARM argued at trial that its interpretation of the language in the Qualcomm ALA granted no rights as to Nuvia's pre-acquisition code, further retaining the obligation of showing that code was developed by or for Qualcomm. (Tr. 585:23-586:15; JTX-11 §§ A.6, B.1.1.1). And further, ARM tried to show to the jury that by acquiring Nuvia after being rejected from using their CPU core designs, Qualcomm

8

Appx0012

could not then avail itself of the Qualcomm ALA's terms permitting collaboration with a "Designer" or "Subsidiary", as those terms (per ARM) licensed collaborations "only for the period during which such control exists."  (Tr. 394:4-396:10; JTX-10 §§ 1.10, 1.23, 2.2).  Although that is competing evidence, it does not change the fact that there was sufficient evidence for the jury to reasonably accept Qualcomm's reading of the ALAs, and the jury was entitled to conclude that the challenged CPUs were developed by or for Qualcomm.

### 3. Whether the CPUs at Issue Constitute "ARM Technology"

Lastly, ARM argues the jury's conclusion on Question 3 of the verdict was against the weight of the evidence because Qualcomm's ALA limited "ARM Technology" to only that technology delivered under the Qualcomm ALA.  (D.I. 592 at 7-9).  ARM asserts that the plain language of Qualcomm's ALA restricts the interpretation of "ARM Technology" to only that delivered to Qualcomm under *its own* ALA, which the Nuvia cores, by definition, were not; and if that argument fails, ARM argues that the Qualcomm ALA expressly disclaims a license to ARM products created or delivered under another ALA (for ARM's purposes here, the Nuvia ALA), so Qualcomm was using "'Arm technology (rather than 'Arm Technology')".  (*Id*. at 8 (underlines in original); JTX-10 §§ 1.3, 2.0, 2.6).  Qualcomm responds that the Qualcomm ALA's definition of "ARM Technology" did not control, Annex 1's definition did, and that ARM's position distinguishing between "ARM Technology" and ARM technology, more generally, was not presented to the jury, and regardless, could have been rejected.  (D.I. 608 at 9-10).

Invoking the now recurring theme, the parties once again point to competing interpretations on the issue.  Qualcomm presented at trial that where "Annex 1 provisions conflict with those in the ALA, Annex 1 controls."  (Tr. 571:6-20).  And the relevant portion of the Annex's definition of "ARM Technology" reads, "any or all, of the architecture technology identified in this Annex

9

1 and any Updates thereto[.]" (JTX-11 § 2, cl. A.10). But according to ARM's interpretation, the Qualcomm ALA forbids the use of ARM technology, even if delivered as ARM Technology, when created under the Nuvia ALA. (D.I. 596 at 8). ARM did not, however, present that argument to the jury at trial. Even if it had, and even were it based solely on the language ARM asserts was clear, the jury was charged with determining the meaning of the contract from the words and any extrinsic evidence. *See supra* III.A.2. With that charge, the jury was entitled to weigh the evidence and reach its verdict that Qualcomm was licensed. *See Marra*, 497 F. 3d at 306; *Woodson*, 109 F. 3d at 921.

### B. Whether ARM Proved that Qualcomm Breached the Nuvia ALA (Verdict Question 2)

ARM also moves for judgment as a matter of law that Qualcomm breached the Nuvia ALA. (*See* D.I. 572). It is axiomatic that an entity can only breach a contract to which it is a party. *See Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*, 679 F. Supp. 3d 971, 982 (C.D. Cal. 2023) ("As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract.") (citation omitted); *Sun v. Cheung*, No. 23-2112 (CSK), 2025 WL 1446378, at *5 (E.D. Cal. May 20, 2025). Thus, because the Nuvia ALA was executed between ARM and Nuvia – not Qualcomm – Qualcomm can be liable for breach only if it assumed the contract upon acquisition of Nuvia.

At trial, once again, the parties presented competing evidence. ARM argued that Qualcomm assumed the Nuvia ALA explicitly in order to use Nuvia's CPU designs, as Qualcomm supposedly knew the Nuvia ALA "defined an acquisition to be an assignment of the Nuvia ALA," and further that ARM had opposed the transfer of the designs central to the Nuvia ALA. (D.I. 596 at 12); (*see* PTX-240; Tr. at 356:12-21, 401:5-18). For its part, Qualcomm argues it showed evidence that the Nuvia ALA was not assumed as a matter of both law and by evidence adduced,

Appx0014

because ARM failed to identify a single document showing that Qualcomm either "agreed to [assume the Nuvia ALA]" or that "Qualcomm intended to do so." (D.I. 608 at 13). Indeed, documentary evidence showed that ARM asked Qualcomm to assume the contract: "ARM is willing to provide consent to the assignment of designs created under NUVIA's architecture license agreement with ARM to Qualcomm, on the condition that Qualcomm agrees to assume the existing terms and conditions under which the design was created . . . under the architecture license agreement in place between ARM and NUVIA, including without limitation the royalty rates." (PTX-260 at 2). Qualcomm showed that that request was denied. (*See, e.g.*, Tr. 180:20-181:7; PTX-242 at 2; PTX-277). On that basis, the jury had ample evidence adduced to reach a conclusion that Qualcomm did not breach the Nuvia ALA because it was explicitly *not* a party to the agreement.

ARM contends that even if the jury found that Qualcomm did not explicitly assume – and consequently breach – the Nuvia ALA, the jury worked against the great weight of evidence in finding that Qualcomm did not ***implicitly*** assume, by its actions, the Nuvia ALA. This is purportedly so because ARM "recounted the actions that reflected Qualcomm's intent to assume . . . the Nuvia ALA." (D.I. 614 at 6). Here, Qualcomm again points to the evidence it adduced demonstrating both an explicit refusal to accept the Nuvia obligations and actions reiterating the same. (D.I. 608 at 14).

California law states that assumption only applies "where the person accepting the benefit was a party to the original transaction" or there "has been an assumption of the obligations . . . determined by the intent of the parties as indicated by their acts, the subject matter of the contract or their words." *Recorded Picture Co. [Productions] Limited.* v. *Nelson Ent., Inc.*, 61 Cal. Rptr. 2d 742, 748 (Cal. Ct. App. 1997). The principle ordinarily applies "when a party accepts all the

benefits of an executory contract." *PF1, Inc. v. Suba*, 2023 WL 3107974, at *2 (Cal. Ct. App. Apr. 27, 2023); *see also Manela v. Stone*, 66 Cal. App. 5th 90, 96 n.2 (Cal. Ct. App. 2021). Given that (as noted above) Qualcomm adduced substantial evidence that it did not take all the benefits of the Nuvia ALA, the jury was entitled to find that Qualcomm did not assume all of the obligations and did not breach the Nuvia ALA.[3]

**C.      Whether Arm Proved that Nuvia Breached the Nuvia ALA (Verdict Question 1)**

On the first question of the verdict sheet – whether Arm proved by a preponderance of the evidence that Nuvia breached Section 15.l(a) of the Nuvia ALA – the jury deadlocked. (D.I. 572). Both parties move for judgment as a matter of law on this issue. ARM argues that Nuvia breached as a matter of law. (D.I. 596 at 9-10). Nuvia, on the other hand, challenges the sufficiency of the evidence as to two essential elements of ARM's breach claim: (1) that ARM was harmed; and (2) that Nuvia's conduct constituted a breach. (D.I. 598 at 4, 7).

**1.      Harm**

**a.      Whether ARM Must Prove Harm**

At the outset, the parties dispute as a matter of law whether ARM was required to prove that it suffered harm to prevail on its claim for specific performance under the Nuvia ALA. (*See* D.I. 598 at 4; D.I. 609 at 5). ARM argues for the first time that it is entitled to "nominal damages" so long as it can establish that Defendants breached the contract. (D.I. 609 at 5-6); Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). Qualcomm and Nuvia reply that harm is a standalone element that must be proved in its own right. (D.I. 598 at 4).

---

[3]      Additionally, as discussed in the following section, *infra* at III.C, ARM's failure to prove harm constitutes another basis to support the jury's finding that Qualcomm did not breach the Nuvia ALA.

12

Appx0016

The Court agrees with Defendants. An essential element of a breach of contract claim is that "plaintiff was harmed as a result" of the breaching conduct. *CSAA Ins. Exch. v. Hodroj*, 72 Cal. App. 5th 272, 276 (Cal. Ct. App. 2021); *see also Densmore v. Manzarek*, No. B186036 (MF), 2008 WL 2209993, at \*13 (Cal. Ct. App. May 29, 2008); *Russo v. Andrews*, No. A155999 (VR), 2022 WL 4493590, at \*6 (Cal. Ct. App. Sept. 28, 2022) ("Injury, or resulting harm, is an element of a breach of contract cause of action.") (citation modified). That being so, if a plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law. *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 327 (S.D.N.Y. 2007). To prevail on a cause of action for breach of contract, the plaintiff must prove the resulting damage to the plaintiff. Indeed, ARM agreed, representing in the Pretrial Order:

> Harm is an essential element of a breach of contract claim under California law. *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 327 (S.D.N.Y. 2007). Because damages are an element of the claim, if a plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law. *Id.* To prevail on a cause of action for breach of contract, the plaintiff must prove the resulting damage to the plaintiff. *Richman* [*v. Hartley*], 224 Cal.App.4th [1182, 1186 (2014)].

(D.I. 518-4 at 10; *see also* D.I. 372 at 20 (summary judgment briefing)).

ARM's assertion of nominal damages does not alter the analysis. Notably, ARM did not pursue its nominal damages theory prior to post trial briefing. Indeed, that theory does not appear in the Pretrial Order, the briefing on the many pretrial motions addressing ARM's assertions of harm and requests for relief or the trial transcript. Instead, ARM represented that its witnesses would describe ARM's ALA licensing program; and that "[t]he only [] reason that this evidence is relevant is to show . . . harm." (D.I. 530 at 27:20-21). At the close of evidence, ARM argued – as it did on summary judgment – that it had adduced sufficient evidence of harm to defeat judgment as a matter of law. (Tr. at 846:20-851:1). During the charge conference, ARM opposed a

13

Appx0017

standalone harm instruction on the basis that "harm is already an element of the contract elements." (*Id.* at 841:2-11). That led the Court to read an agreed-upon jury instruction that, "[t]o prove Qualcomm or Nuvia's breach of contract, ARM must prove . . . ARM suffered harm." (*Id.* at 885:8-25). And ARM closed its case by arguing to the jury that it had proven harm. (*Id.* at 988:3-6).

In sum, ARM committed to proving harm throughout this litigation. It cannot now abandon that burden after trial in the face of an adverse jury verdict. *See Haley v. Casa Del Rey Homeowners Ass'n*, 63 Cal. Rptr. 3d 514, 521-22 (Cal. Ct. App. 2007); *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 850 (Cal. Ct. App. 2018).

### b.   Whether ARM Proved Harm

Aside from its assertion of nominal damages, ARM contends that it was harmed because its technology was being used in the market without a license, harming its licensing "ecosystem." (*See* Tr. at 100:21-25, 228:8-18, 229:15-24, 247:11-248:4, 278:25-281:1; D.I. 609 at 8-10). And, second, as a result, ARM received less in royalty payments than it otherwise would have. (*Id.* at 850:21-851:1; D.I. 609 at 9, n.1).

As to the first grounds, ARM presented no trial evidence from third-party market participants suggesting that ARM's licensing ecosystem was negatively impacted by Nuvia's alleged breach of the Nuvia ALA. That lack of evidence was largely due to ARM's refusal to provide discovery into its third-party contracts. (*See* D.I. 530 at 26:20-27:19) ("We do not intend to put in any evidence about the specific terms of specific agreements."). On the other hand, there was trial evidence to undermine that ARM suffered any adverse consequences at all, such as when ARM's CEO testified that ARM recorded historic licensing and royalty revenues after terminating the Nuvia ALA in 2022. (*See* Tr. at 198:18-199:21, 281:7-288:23; DTX-791 at 2, 1495 at 2-3).

ARM's theory of harm is further derailed by the jury's finding that Qualcomm's products were, in fact, licensed, given that a predicate to the purported harm is unlicensed use. (Tr. at 100:19-25) ("What we are relying on to meet the element of harm . . . is that we have been damaged by the unlicensed use of our intellectual property."). In any event, ARM does not appear to contest this point in its briefing and therefore concedes it. *See In re Wilmington Trust Secs. Litig.*, No. 10-990 (SRF), 2017 WL 2467059, at *2 (D. Del. June 7, 2017) ("When a responding party fails to defend against an issue which is the subject of a motion, courts consistently construe the failure to respond as an abandonment of the issue or a concession that the moving party is correct.").

Second, ARM contends that "evidence in the record shows that Nuvia's breach caused Arm to lose royalty payments." (D.I. 609 at 8). Even if there is such evidence, ARM's argument is foreclosed by the Court's ruling on the morning of the start of trial that ARM could not pursue a lost royalties theory without showing that it "actually disclosed that as an element of [its] claim" in discovery. (Tr. at 96:16-97:7); *United States v. Schiff*, 602 F. 3d 152, 176 (3d Cir. 2010) ("[A] district court [has] broad discretion in its rulings concerning case management both before and during trial."). The Court left open the possibility that ARM could seek reconsideration of its ruling should it have evidence of timely disclosure, but ARM chose not to do so. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F. 3d 254, 297 (3d Cir. 2012) ("A plaintiff omits evidence necessary to sustain a damages award at its own risk."); Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Indeed, it was only after trial and post-trial briefing, that ARM attempted to show that it had disclosed its royalty theory during discovery. (D.I. 628 at 43:4-45:1). Allowing such a dramatic late-breaking shift in ARM's theory of the case

15

Appx0019

would have been highly prejudicial to Defendants, who did not have the benefit of preparing a defense to such a theory. *See IPPV Enters., LLC v. Echostar Commc'ns, Corp.*, 191 F. Supp. 2d 530, 572 (D. Del. 2002) ("[T]he court finds that [plaintiff's] failure to disclose their shift in damages theory . . . prejudiced [defendant].").

Accordingly, the Court finds that no reasonable jury could find that ARM proved harm by a preponderance of the evidence and grants judgment as a matter of law to Nuvia on Question 1.

### 2. <u>Breach</u>

The parties also move for judgment as a matter of law on the second element of ARM's breach of contract claim: breach. ARM says that the trial evidence permits only one conclusion: that Nuvia breached. (D.I. 596 at 9). Nuvia asserts the opposite. (D.I. 598 at 7). Because the Court has already found that ARM failed to present substantial evidence to sustain the element of harm, ARM's claim fails and the Court need not consider either side's arguments on the element of breach. *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1132 (S.D. Cal. 2012); *United States v. Int'l Fid. Ins. Co.*, No. 16-8064 (DSF), 2019 WL 4187846, at *2 (C.D. Cal. Sept. 4, 2019) ("[Counterclaim plaintiffs] have not proven damages. This is fatal to the [breach] counterclaim."); *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 10-2856 (EJD), 2012 WL 2945932, at *13 (N.D. Cal. July 18, 2012) ("[F]ailure to prove resulting damages is fatal to [Plaintiff's] claim.").

### D. ARM's Motion for a New Trial

Finally, ARM moves for a new trial "because the jury deadlocked on th[e] issue" of "whether Nuvia breached the Nuvia ALA." (D.I. 596 at 14). ARM says that a "new trial on that single issue necessitates a new trial across the board because the issues in this case are 'so interwoven' that they 'cannot be submitted to the jury independently' without violating the

16

Appx0020

Seventh Amendment's Reexamination Clause." (*Id.*) (quoting *Gasoline Prods. Co. v. Champlin Refining Corp.*, 283 U.S. 494, 500 (1931)). The Court has already granted judgment as a matter of law to Nuvia, finding that ARM failed to prove at trial that Nuvia breached the Nuvia ALA. There will be no second trial on that issue, and, therefore, ARM's motion for a new trial is denied.

## IV.    CONCLUSION

For the foregoing reasons, ARM's renewed motion for judgment as a matter of law or a new trial (D.I. 595) is DENIED, Nuvia's motion for judgment as a matter of law (D.I. 597) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order and final judgment will follow.

17

Appx0021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 22-1146 (MN) |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

At Wilmington this 30th day of September 2025:

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1.      Plaintiff ARM Ltd.'s ("ARM") renewed motion for judgment as a matter of law or

a new trial (D.I. 595) is DENIED.

2.      Defendant Nuvia Inc.'s motion for judgment as a matter of law (D.I. 597)

is GRANTED as to ARM's failure to prove harm by a preponderance of the evidence at trial and

is otherwise DENIED.

3.      The Clerk is directed to enter Final Judgment.

The Honorable Maryellen Noreika
United States District Judge

Appx0022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 22-1146 (MN) |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC, | ) | |
| | ) | |
| Defendants. | ) | |

## FINAL JUDGMENT

At Wilmington this 30th day of September 2025, the Court having held a jury trial (*see* D.I. 588, 589, 590, 591, 592), the jury having rendered a unanimous verdict on Questions 2 and 3 and reaching a deadlock on Question 1 on December 20, 2024 (*see* D.I. 572), and the Court having issued its Memorandum Opinions and Orders resolving the parties' post-trial motions September 30, 2025 (D.I. 631, 632), pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED that:

1. Judgment is entered in favor of Defendants Nuvia Inc. ("Nuvia"), Qualcomm Inc., and Qualcomm Technologies, Inc. ("Qualcomm") (together, "Defendants") and against Plaintiff ARM Ltd. ("ARM or "Plaintiff"), that (1) Nuvia did not breach the Nuvia ALA, (2) Qualcomm did not breach the Nuvia ALA, and (3) Qualcomm was licensed under the Qualcomm ALA.

IT FURTHER ORDERED that the deadline for any party to move for costs and attorneys' fees (including under 35 U.S.C. § 285) is extended to within fourteen (14) days after the time for appeal has expired or within fourteen (14) days after issuance of the mandate from the appellate court, whichever is later, and no party shall file any such motion before that time.

The Honorable Maryellen Noreika
United States District Judge

Appx0023

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ARM LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>QUALCOMM INC., QUALCOMM<br>TECHNOLOGIES, INC., and NUVIA, INC.,<br><br>        Defendants. | C.A. No. 22-1146-MN |

## ARM LTD.'S NOTICE OF APPEAL

Notice is hereby given that Arm Ltd. appeals to the United States Court of Appeals for the Third Circuit from the Final Judgment (D.I. 634), and all judgments, decrees, decisions, rulings, and opinions that merged into and became part of that judgment, that shaped that judgment, that are related to that judgment, and/or upon which that judgment is based. This includes, without limitation, all orders resolving motions in a manner in any way adverse to Arm, as well as all rulings, orders, findings, conclusions, and decisions (interlocutory or final, oral or written) underlying such orders. *See* 28 U.S.C. § 1291; Fed. R. App. P. 3, 4.

Concurrent with this notice, Arm has remitted payment of the filing fee ($5.00) and the docketing fee ($600.00) as required by 28 U.S.C. § 1917, Federal Rule of Appellate Procedure 3(e), and the fee schedules of the District of Delaware and the Third Circuit.

1

Dated: October 1, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Joyce Liou
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

 /s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

2

Appx0025

(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1500
dmuino@mofo.com

3

Appx0026

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 1, 2025, a copy of the foregoing

document was served on the counsel listed below by email:

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

*/s/ Anne Shea Gaza* _____
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Plaintiff Arm Ltd.*

4

Appx0027

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system on January 15, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that I caused a copy of the sealed version of this filing to be served on counsel for defendants-appellees via email with consent of counsel.

Dated:  January 15, 2026              /s/ Joseph R. Palmore
                                      Joseph R. Palmore