MORRISON FOERSTER

2100 L STREET, NW
SUITE 900
WASHINGTON
DC 20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SEATTLE, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

October 14, 2026

Writer's Direct Contact
+1 (202) 887-6940
JPalmore@mofo.com

**Via CM/ECF**

Patricia S. Dodszuweit
Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

**Re: *Arm Ltd. v. Qualcomm Inc.*, No. 25-2923**
**Supplemental Brief for Plaintiff-Appellant Arm Ltd. in Response to Court's October 2, 2026 Order**

*Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525 (1958), and related cases—while not directly implicated here for the reasons explained below—reinforce the fundamental proposition underlying Arm's argument on Qualcomm's counterclaim: courts, not juries, decide legal questions. The district court here abdicated its responsibility to construe the Qualcomm ALA by tossing that question of law to the jury.

*Byrd* addressed when federal, rather than state, law should govern the division of responsibility between judge and jury in diversity actions. *Byrd* held that federal law required a jury in a diversity case to decide a fact question even though state law committed it to the judge. *Id.* at 538. *Byrd* also discussed the converse situation, relying on an earlier decision upholding a judge's choice to decide a legal question even though state law committed it to a jury. *Id.* at 538-39 (citing *Herron v. S. Pac.*, 283 U.S. 91 (1931)). *Herron* reflected the principle that "state laws cannot alter the essential character or function of a federal court." *Id.* at 539 (quoting *Herron*, 283 U.S. at 94).

There is no *Byrd* issue here because both California and federal law would treat the contract-interpretation inquiry underlying Qualcomm's declaratory-judgment counterclaim as a legal question for the court. Under either regime, it was error for the district court to decline to address that interpretative question on the ground that the jury had decided it.

As Arm explained, the ALA's meaning is a legal question under California law. "It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence." *Hess v. Ford Motor*, 27 Cal.4th 516, 527 (2002); *see O'Connor v. W. Sacramento Co.*, 189 Cal. 7, 18 (1922) ("[T]he construction of a contract is always a matter of law for the court, no matter how ambiguous or uncertain or difficult its terms, and [] the jury can only assist the court by determining disputed questions of fact."). The "threshold" step of interpretation is "[w]hether a contract is ambiguous," which is "a question of law for the court." *Carolina Beverage v. FIJI Water*, 102 Cal.App.5th 977, 989 (2024). In conducting that legal inquiry, the court may provisionally review extrinsic evidence to determine whether a contract is reasonably susceptible to a party's proffered meaning. *Scheenstra v. Cal. Dairies*, 213 Cal.App.4th 370, 389-90 (2013).

Here, the Qualcomm ALA unambiguously prohibits using Nuvia RTL in Qualcomm's CPUs—and no extrinsic evidence reveals a latent ambiguity on that issue supporting Qualcomm's contrary interpretation. That means the contract-interpretation inquiry is over as a matter of California law. *Id.*; Opening.Br.20-27; Reply.Br.3-9. Even were the ALA ambiguous, its interpretation remains a question of law because Qualcomm's extrinsic evidence is either "incompetent" or presents "no conflict"—i.e., does not raise a "credibility" dispute. *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1126-27 (2008); Opening.Br.32-35; Reply.Br.9-13.

The ALA's meaning would present a legal question under federal law too. As in California, the first step of contract interpretation under federal law is determining whether "[a]mbiguity" exists, which "is a pure question of law for the court." *Am. Flint Glass Workers Union v. Beaumont Glass*, 62 F.3d 574, 581 (3d Cir. 1995); *accord Sandoz v. United Therapeutics*, ___ F.4th ____, 2026 WL

3013574, at *3 (3d Cir. Oct. 7, 2026) ("Whether a contract is ambiguous is an issue of law subject to plenary review."). Under "[f]ederal law," in "making the ambiguity determination, a court must consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings." *Mylan v. SmithKline Beecham*, 723 F.3d 413, 418-19 & n.8 (3d Cir. 2013) (citation omitted). Here, none of that extrinsic evidence supports Qualcomm's atextual reading. Opening.Br.32-35; Reply.Br.9-13.

Even were the ALA ambiguous, federal law, just like California law, would treat its interpretation as a legal question because no "objective evidence" lends support to Qualcomm's interpretation. *See Int'l Union, UAW v. Mack Trucks*, 917 F.2d 107, 111 (3d Cir. 1990); Opening.Br.32-35; Reply.Br.9-13 (explaining how Qualcomm's evidence was not objective or otherwise did not support Qualcomm's reading). The Ninth Circuit, which often applies California law, has said it "discern[s] … no difference between [California] and federal contract law" on these principles. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073, 1079 (9th Cir. 2010) (second alteration court's) (citing, inter alia, *Wolf*, 162 Cal.App.4th at 1125-26). In that case, the court held that under "principles of federal contract law," "no genuine issue of material fact precluded the district court from interpreting" even an "ambiguous" contract "as a matter of law" because the parties' extrinsic evidence did not "support" their "competing interpretations." *Id.*

Thus, the district court erred regardless of which law applies. Under either California or federal law, the court impermissibly avoided its obligation to independently consider (1) whether the ALA is ambiguous and (2) whether resolving that ambiguity turns in part on objective extrinsic evidence supporting Qualcomm's interpretation. At both steps, the Qualcomm ALA's meaning is a question of law for the court—one that should have been resolved in Arm's favor.

Were Qualcomm now to argue that federal law applies under *Byrd*—and somehow demands a jury determination of its counterclaim under circumstances where California law would not—it has waived that argument by contractually opting into California law and consistently invoking it on its counterclaim. Appx6915 (Qualcomm ALA); Appx1233 (Qualcomm MSJ); Appx6698, 6701 (Qualcomm JMOL Opp.); Response.Br.26-27. "[T]he Supreme Court has long

recognized that a private litigant may waive the right to a jury trial." *Tracinda v. DaimlerChrysler*, 502 F.3d 212, 222-23 (3d Cir. 2007); *see Tyng v. Grinnell*, 92 U.S. 467, 468-69 (1876) (fact issues may be determined by court when parties waive jury).

For its part, Arm has consistently maintained that interpretation of the Qualcomm ALA is a legal issue for the court. That is true regardless of which law applies because "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Unlike with the waivable right to a jury determination of factual questions, a court's transfer of its obligation to decide legal questions to a jury upon agreement of the parties would raise serious constitutional questions. The "discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides"; thus, where "the question is one of law, the judge has the right and duty to direct a verdict." *Herron*, 283 U.S. at 95-96; *see Roberts v. Cooper*, 61 U.S. (20 How.) 467, 481 (1857) ("counsel cannot appeal to a jury to decide legal questions"); *cf. W. Pioneer Ins. v. Est. of Taira*, 136 Cal.App.3d 174, 182 (1982) ("interpretation of statutes or law is normally not a proper subject for stipulation of the parties, but is a matter for the courts"); *R.J. Land & Assocs. Constr. Co. v. Kiewit-Shea*, 69 Cal.App.4th 416, 427 n.4 (1999) (rejecting party's concession on "question of pure law" because court's "function to correctly interpret" that law is "not controlled" by "concession of its meaning"); *OneBeacon Am. Ins. v. Superior Ct.*, No. B244628, 2013 WL 2996703, at *5 (Cal. Ct. App. June 17, 2013) (concluding that "parties' position that the contracting parties' present day agreement is paramount and conclusive on the meaning of the contracts … contravenes California and New York law on the interpretation of contracts").

Lastly, Arm's participation in jury-instruction proceedings on Qualcomm's counterclaim after the district court deferred ruling on Arm's Rule 50(a) motion is irrelevant to the forfeiture or opt-in questions raised in the Court's order. As noted, under both California and federal law it is improper for a jury to interpret a contract when its meaning does not turn on relevant extrinsic evidence. And under both regimes, the district court had an independent obligation to decide that legal question itself. Regardless, Arm waived nothing.

As Arm explained, failure to object to an instruction—and even proposing such an instruction—does not relieve courts of the responsibility to apply the correct law when deciding judgment as a matter of law. Opening.Br.28-29 (citing, inter alia, *St. Louis v. Praprotnik*, 485 U.S. 112, 120 (1988) (plurality op.); *Boyle v. United Techs*., 487 U.S. 500, 513-14 (1988)).[1]

Respectfully submitted,

/s/ Joseph R. Palmore
Joseph R. Palmore

[1] Arm's brief (at 28-29) inadvertently omitted the plurality-opinion designation when citing *Praprotnik*. The plurality's statement, however, reflects the controlling rule on this issue because *Praprotnik*'s concurrence in the judgment disagreed only with the plurality's substantive "theory of municipal liability." 485 U.S. at 132 (Brennan, J., concurring in judgment); *see Boyle*, 487 U.S. at 513-14 (embracing *Praprotnik* plurality's Rule 50 discussion).

## CERTIFICATE OF COMPLIANCE

The foregoing letter brief complies with the relevant type-volume, typeface, and type style requirements of the Federal Rules of Appellate Procedure, Third Circuit Local Appellate Rules, and this Court's October 2, 2026 order because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and includes 1,453 words.

Pursuant to Third Circuit Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text of the paper copies, that the virus detection program Microsoft Defender was run on the electronic file containing this filing, and that no virus was detected.

Dated: October 14, 2026

/s/ Joseph R. Palmore
Joseph R. Palmore